# SUPREME COURT OF TEXAS.

## AUSTIN SESSION, OCTOBER, 1866.

## G. W. WHITEHEAD ET AL. v. W. G. L. FOLEY ET AL.

A disclaimer by the defendant as to part of the land sued for is not to the prejudice of the plaintiff, and the allowance of such disclaimer by the court, after the parties announced themselves ready for trial, is, therefore, not an error, for which the judgment in favor of the defendant for the remainder of the land will be reversed.

If a disclaimer, by which a defendant diminishes the extent of the boundaries which he claims, be an amendment, after the parties announce themselves ready for trial, it may yet be filed. (Paschal's Dig., Art. 54, Note 243.)

It is not now an open question in this court, that an entry and occupation of land by a trespasser, claiming to hold under the location and survey of his valid head-right certificate, operates a disseizin of the true owner of the land to the extent of the boundaries of the survey.

The adverse possession of the trespasser in such case is not limited to the land actually occupied by him, but is co-extensive with the limits of his survey.

The 1st section of the act of the 19th January, 1841, reads as follows: "The commissioner of the general land office is hereby authorized and required forthwith to make out patents upon all claims which have been, or may hereafter be, returned as genuine and justly entitled by the different boards of land commissioners appointed under 'An act to detect fraudulent land certificates,' whether the same have been obtained in strict accordance with law or not, and the commissioner of the general land office is hereby authorized to employ two additional clerks, who shall be allowed the same salaries and pay as other clerks of the land office." (Hart. Dig. Art. 2021.)

Land certificates which were returned as genuine by the traveling board of land commissioners, but which were not recommended for patent by said board, on account of the want of the oath required by the 12th section of the land law of December 1, 1837, (Paschal's Dig., Art. 4140,) were validated and expressly directed to be patented by the act of January 19, 1841,

1—XXVIII.

(Hart. Dig., Art. 2021,) and subsequent to that date claimants under such certificates were entitled to all the rights and privileges of the holders of other valid and established claims for land.

The statute of limitations of three years (Paschal's Dig., Art. 4622, Note 1031) does not require that all the links in the chain of transfer shall be in writing, but merely that title shall be shown "by a regular chain of transfer from or under the sovereignty of the soil."

It is only when the chain of transfer, under the 15th section of the act of limitations, is not regular, that the statute requires the irregular links to be in writing.

To sustain the plea of the statute of limitations of three years, title by inheritance is as regular and effectual as if acquired by written conveyance.

The fact that the owner of a head-right certificate, at the time of locating it, was aware that his survey conflicted with another valid grant, is not made by the statute an exception to the running of limitation in his favor, nor is he thereby debarred from the protection of the statute, if the owner of the superior title fail to prosecute his suit within the time prescribed by law, and it is not for this court to engraft such a provision on the statute.

When the owner of a valid head-right certificate had reason to believe that a previous grant to another person was void, or that it had been forfeited by abandonment, and, in consequence, located his certificate on the same land, his title was not inconsistent with "intrinsic fairness and honesty," and the statute of limitations of three years would run in his favor. (Paschal's Dig., Art. 4622, Note 1031.)

The adverse possession required to support the plea of three years' limitation need not consist in the personal occupation of the land by the defendant himself; it is equally effectual if held by his servant, agent, or attorney.

If the possession be in privity with the defendant—in his name and stead, and on his account—it is his possession in contemplation of law, he is chargeable with the responsibility of it, and may avail himself of its benefits.

When there is no intention of abandoning possession, the fact that premises are left without an occupant for a short period, intervening between the removal of one tenant and the entry of another, does not interrupt the running of the statute of limitations in favor of the landlord; and, in determining whether there was an intention of abandonment, the attendant circumstances are to be considered. (See this case for circumstances held sufficient to show that, in contemplation of law, there was no intention of abandonment, notwithstanding that the premises were left without an actual occupant for a period of five months, there being a large amount of corn left in the crib, &c.)

APPEAL from Lavaca. The case was tried before Hon. FIELDING JONES, one of the district judges.

This suit was brought by the appellants, George W.

Whitehead and others, as the heirs of Ephraim White-
head, deceased, against William G. L. Foley and Mason
B. Foley, the appellees, for a league of land in Lavaca
county.   Petition filed September 11, 1855.

The plaintiffs alleged in their petition their heirship to
the said Ephraim Whitehead, and represented that he, as
a colonist of Austin's colony, obtained from the proper
authorities of the State of Coahuila and Texas a grant of
the league of land in controversy, and was put in formal
possession of it on or about the 8th of December, 1831;
that, in consequence of his dangerous ill-health, the said
Ephraim Whitehead, on or about the 20th of April, 1837,
went from Texas to the city of New Orleans, for the pur-
pose of obtaining medical assistance, not then to be had
in Texas, and there long lingered until he died, leaving
plaintiffs as his heirs; that the defendants had set up some
feigned, false, and fraudulent, or other title and claim to
the said league, and had tortiously, and with force and
arms, trespassed upon and taken possession of the same,
using and destroying the timber, &c., to the damage of
plaintiffs $10,000; that by false and fraudulent representa-
tions of title in themselves, the defendants were casting a
cloud over the title of petitioners.   Prayer, that defend-
ants be required to produce any pretended title they have,
and that it be cancelled and annulled; that the title and
possession of the said league be decreed to petitioners, and
that they have judgment for their said damages, &c.

W. G. L. Foley, one of the defendants, answered with
a general denial, and also specially plead, that his son,
Sterling Tucker Foley, in the year 1833, settled upon one-
third of the league sued for, claiming it as his homestead;
that in February, 1838, the said S. T. Foley caused his
said head-right to be surveyed, in virtue of his head-right
certificate for one-third of a league, issued to him by the
board of land commissioners of Colorado county; that
said survey was properly made, and the field-notes duly

returned to the general land office; that the certificate was recommended as genuine by the traveling board of land commissioners; that said S. T. Foley took possession of said third of a league in 1833, and held it adversely to all the world till his death, in 1842; that he was a single man, without wife or child; and that this defendant and his wife, the mother of said S. T. Foley, were his heirs, and as such succeeded to the possession and claim of said third of a league, and have ever since continued to hold the same adversely to all others. This defendant also plead the limitations of three and ten years, &c.

Mason B. Foley, the other defendant, besides a general denial, answered, that in the year 1834 he applied for and settled upon a part of the league sued for, claiming the same as his head-right, taking, and ever since holding, possession of the same adversely to all persons; that, in 1838, he caused the same to be surveyed, by virtue of his head-right of one-third of a league; that his head-right certificate, under which the survey was made, was issued to him by the board of land commissioners of Colorado county, on the —— day of ————, 1838, and was duly recommended as genuine by the traveling board; that the said certificate is legal and genuine, and the field-notes of said survey were duly recorded and returned to the general land office before 1852; that he has occupied, used, cultivated, enjoyed, and held said third of a league adversely, from the year 1834 up to the present time, openly, and with marked and defined boundaries, in virtue of his head-right aforesaid. He further pleaded the limitations of three and ten years, &c.

The case came to trial at the fall term, 1857. After the parties announced themselves ready for trial, the defendants, by leave of court, amended their answers, and disclaimed as to all of the league sued for, except the two-thirds comprised within their head-right surveys.

The plaintiffs read in evidence the grant to Ephraim

Whitehead, dated November 14, 1831, and proved that he arrived in Texas in that year, and was engaged in merchandising in Goliad, and that part of his family remained in New Orleans and part came to Texas. One witness stated that Ephraim Whitehead lived in Texas two or three years. It was proved that he died at New Orleans, where he had lived for many years previous to his death, and that the plaintiffs were his children and heirs.

By John Toliver, who was in 1838 the county surveyor of Colorado county, the limits of which then comprised the land in controversy, the plaintiffs proved that the grant to Ephraim Whitehead and its location were well and generally known; that a deputy of witness made the surveys for M. B. and S. T. Foley, in 1838, under their head-right certificates; that the locations and surveys were made on the Whitehead league, "under the impression that Whitehead had abandoned the land, as it was believed to be unlawful to locate or survey any lands previously granted."

The plaintiffs also read in evidence the proceedings in an action of trespass to try title, instituted by Ephraim Whitehead against Mason B. Foley and James Burleson, on the 8th, of September, 1843, for the league now in suit, which action was stricken from the docket at the spring term, 1847, for the non-compliance of the plaintiffs with a rule for security for costs.

The defendants introduced certified copies from the general land office of their head-right certificates, and of the field-notes of the league surveys, made in 1838, and also a transcript from the original returns of the "traveling board," by which it appeared that the head-right claim of the defendant, M. B. Foley, was returned by that board "for the action of the government, believing it to be a just claim," but that that board declined recommending it for patent, because the claimant had not subscribed the oath required by the 12th section of the land law of December 14, 1837. The plaintiffs objected to the admission of these

transcripts from the general land office, but their objections were overruled, and they excepted.

With reference to the third of the league claimed by W. G. L. Foley, as the head-right of his deceased son, S. T. Foley, the defendants proved that S. T. Foley was killed by Indians in 1842, leaving no wife or child, and that W. G. L. Foley and Sarah, his wife, were the parents of said S. T. Foley, and were still living; that the witness, H. S. Foley, in the latter part of 1851, under W. G. L. Foley, entered and settled upon the said third of a league surveyed for S. T. Foley in 1838; that he built houses on it, and inclosed and cultivated about fifty-five acres of it; that, towards the close of 1853, witness bought land on the Navidad, to which he moved in October, of that year, and rented the S. T. Foley third of a league to one Bullock; but that when witness moved, he left his stock and about eight hundred bushels of corn on the place, where they remained until Bullock went on the premises in the latter part of January or early in February, 1854. Witness had no written lease from W. G. L. Foley, and paid him no rent, but held the land under him until the beginning of 1855, when he surrendered the possession to said W. G. L. Foley, who was the father of the witness.

By Bullock, the defendants proved the same facts with regard to the occupation of the land down to the beginning of 1855, when witness vacated it, and was succeeded by one Blundell, and that W. G. L. Foley now cultivates it.

With reference to the M. B. Foley third of a league, the defendants proved that he had improvements, inclosures, pens, &c., on it in 1835, and by himself or his tenants had occupied it ever since.

The jury found in favor of the defendants as to the two-thirds of the league covered by their surveys, and for the plaintiffs as to the remainder. Judgment accordingly.

Plaintiffs moved for a new trial, assigning, besides other causes, the ruling of the court in allowing the defendants,

after the case was opened to the jury, to disclaim as to part of the land sued for. The motion was overruled, and plaintiffs excepted.

*C. Y. Hutchinson,* for the appellants.

*I. A. Paschal,* also for the appellants.—The evidence fully shows that the small part of the Whitehead league, containing but a few acres, embraced in the field of M. B. Foley, has been constantly possessed by the latter from 1835 down to the institution of this suit, as above stated.

But, in 1843, a suit was instituted by the plaintiffs against this defendant, which was dismissed by order of the court in 1844, and on the next day the same was reinstated, and finally dismissed in 1847, at the spring term thereof, by order of the court.

This suit was an interruption of the statute of limitations, and the statute only began to run anew from 1847. From this date, till the institution of this suit, ten years did not elapse. (See latter clause act of limitations, sec. 14.)

But can the defendant successfully plead the limitation of three years and hold under color of title? I think not.

There is evidence that the certificate to M. B. Foley, and by virtue of which the survey was made, was not recommended for patent by the traveling board of land commissioners, nor was it reported as genuine. The commissioners state in their report they believe the same to be just. But this does not bring it within the provisions of Art. 2021 Hart. Dig. That article only refers to such certificates as were reported as genuine.

This could not be said of a certificate where so material a point was wanted in its procurement as the affidavit. In this light the commissioner of the general land office seems to have regarded it, as will appear from his certificate.

Again: There is a want of "intrinsic fairness and honesty" about this color of title, which would prevent the

defendant from availing himself of the three years' limitation.

It is in proof that the defendants knew of the grant of Whitehead. When he first made his application to have the land surveyed, he was told the same conflicted with the Whitehead league. The field-notes of his own survey show the same league on the line of the Whitehead league, and ran upon that line.

Now, I take it that, under this statute, wherever the party cláims under a mere color of title, such as a location or survey, to succeed, there must at least be intrinsic fairness and honesty; he must locate upon lands which he honestly believes to be vacant. That he cannot put down a certificate upon patented land, knowing it to be patented, with the intention of depriving the owner of the same, and then avail himself of the statute. This would not only be directly against the statute, but a principle too monstrous to be tolerated.

As to the third of a league claimed by W. G. L. Foley under the survey by virtue of the head-right of S. T. Foley, he cannot avail himself of the 14th or 15th sections of the act of limitation.

The first possession on this third of a league by actual occupancy was by H. S. Foley, sometime in 1851, and he continued in possession till October, 1853, when he left the place, and moved down on the Navidad.

From the cutting of the first log or rail on this tract till the institution of this suit ten years did not elapse. From the time H. S. Foley actually took possession of the survey till the institution of this suit about four years elapsed, and at the time he left the premises there were about fifty-five acres in cultivation.

But the possession was not continuous, nor with a regular transfer of title down to the party in possession. H. S. Foley left the land a little over two years after he went into possession, and for five months the same remained

vacant, unless the possession were maintained by eight hundred bushels of corn in the field, and a few cattle running in the range.

There seems to have been no privity between W. Bullock and between W. G. L. Foley, the defendant, nor between Blundell and either of the Foleys. Bullock appears to have gone upon the land merely to occupy the improvements made by H. S. Foley, and Blundell to have taken possession by authority of Bullock.

Then, the possession was interrupted and not continuous, and was without a transfer down to the party in possession. A mere possession of a portion of the Whitehead league by H. S. Foley, without a written lease or transfer from W. G. L. Foley, could give to the world no evidence of an open possession under an adverse title, or color of title, in the name of another.

There should have been some transfer, by lease or otherwise, to indicate the title under which he was holding. In other words, the party in possession must be connected by transfer with the title under which he claims, to bar the right of recovery under the 15th section of the act. If W. G. L. Foley gave permission to H. S. Foley to move upon the place in 1851, this contract only continues in force (unless in writing) one year. There is no evidence the contract was ever renewed.

The certificate of S. T. Foley was reported as genuine, and recommended for patent, but there is the same want of fairness and honesty in this color of title as in the other, as the locator had full knowledge of the Whitehead grant.

*G. W. Smith*, for the appellees.

MOORE, C. J.—The action of the court, permitting the defendants to file a disclaimer for the land claimed by the plaintiffs, not embraced in their pleas of limitation,

in no manner affected injuriously the rights of the plaintiffs. All the costs which had accrued prior to their disclaimer were adjudged against the defendants. If the plaintiffs had been willing, on the presentation of the disclaimer, to discontinue their suit for the remainder of the land, all controversey between the parties would have been at an end. This they were unwilling to do; and, as they failed to maintain their assumption of a right to a verdict on the only matter remaining in issue, the cost subsequently accruing was properly imposed upon them. A refusal to admit the disclaimer would not have changed the result of the controversy as to the property in dispute. It would merely have enabled the plaintiffs, by claiming in their petition land upon which the defendants had not trespassed, and to which they in fact set up no title, to have litigated the matters really in dispute at the cost of the defendants. Such an assumption certainly does not present itself favorably to the consideration of the court. It is insisted, however, that the disclaimer was presented as an amendment, and the court was forbidden by the statute from permitting this to be done after the parties had announced themselves ready for trial. The language of the statute, (O. &. W. Dig., Art. 434,) if technically construed, may admit of this construction. But it certainly never has been supposed that the district courts cannot permit parties, if necessary to accomplish the ends of justice, to withdraw an announcement at any time before a case is submitted to the jury. And if this be done, it is undeniable that the pleadings may then be amended; so also, after a verdict, a new trial may be granted for the mere purpose of permitting an amendment. Was it the purpose of the legislature to forbid the court doing directly what may thus be circuitously accomplished? It can hardly be thought that this is the true meaning or interpretation of the statute. It is more reasonable to conclude, that the object of the law was to prescribe a general rule, under

which parties should have the absolute right of amendment before they announce themselves ready for trial and not thereafter, but not to take from the court the power of making any order during the progress of the trial, which might be found necessary for more certainly and speedily attaining the justice of the case. If, however, this be not the correct interpretation of the law, the most that can be said is, that the ruling complained of is but an irregularity, which in no way injuriously affects the plaintiffs, and is not therefore a ground upon which they can ask a reversal of the judgment.

The disclaimer of the defendants and the charge of the court, to the effect that the plaintiffs were entitled to recover, unless the defendants had shown three years' adverse possession of the land claimed in their pleas of limitation, render it unnecessary for us to consider any other questions than those presented by this branch of the case.

It is certainly not now an open question in this court, that an entry and occupation of land by a trespasser, claiming to hold under the location and survey of a valid head-right certificate, of which he is the owner, operates as a disseizin of the true owner of the land, to the extent of the boundaries of the survey by which he claims. His adverse possession in such case is not limited to the land actually in occupation, but is co-extensive with the limits marked out by the survey under which he claims to hold.

The possession of the land claimed by the defendant, M. B. Foley, is admitted to have been adverse and continuous for many years beyond the period to complete the bar of the statute. The only possible question which it seems can be made to the sufficiency of his defense is, that his certificate was not recommended for patent by the traveling board of land commissioners. It was one of a class of certificates of which the commissioners say,

that it did not appear that the oath required by the 12th section of the land law of December 14, 1837, had been subscribed, and, therefore, they did not conceive them-selzes authorized to recommend them for patent, but returned them, subject to the action of the government, believing them to be genuine. Only such certificates as were recommended for patent could, under the law organizing the board for detecting fraudulent certificates and to provide for issuing patents to legal claimants, have been recognized as valid or sufficient to give color of title to occupants of land surveyed thereby. But certificates of this kind were made valid and patents expressly required to be issued upon them by act of the congress of the republic of Texas, passed January 19, 1841. Subsequently to that time, claimants under them were certainly entitled to all the rights and privileges of the holders of other valid and established claims for land.

The validity of the certificate under which the defend-ant, W. G. L. Foley, claims, is not questioned; but it is insisted that he has not brought himself within the pro-visions of the 15th section of the statute of limitations, upon which he relies to bar the plaintiffs' suit, because it is said: 1st, He claims title to the certificate by inherit-ance, and not by a chain of transfer, "the memorials or muniments" of which are in writing; 2d, It was known to the owner of the certificate at the time he made his location and survey that it was in conflict with the league of land claimed by the plaintiffs, and there is consequently a "want of intrinsic fairness and honesty," which pre-cludes him from availing himself of the plea of limitation, by reason of three years' adverse posssession; 3d, The defendant cannot sustain his defense under this section of the statute, unless he has shown personal occupancy or pos-session, or at most he can only do so when he relies upon the occupancy or possession of some one holding for or under him, by showing that such occupant holds by writ-

ten lease or authority; 4th, There was a want of continuity of possession for the time required to bar the plaintiffs' suit.    (Paschal's Dig., Art. 4622, Note 1031.)

To the first of these objections, it is sufficient to say, that it has been decided in this court, in the case of Williamson v. Simpson, 16 Tex., 433, that there is "no necessity for a transfer when the party claims by inheritance." The statute does not absolutely require, as plaintiffs seem to suppose, that all the links in the chain of transfer shall be in writing, but merely that title shall be shown "by a regular chain of transfer from or under the sovereignty of the soil."    Title acquired by inheritance is as regular and effectual as if by written memorial.    It is only where the chain of transfer is not regular, that the statute requires the irregular links to be evidenced in writing, although the instrument be not executed with the forms and solemnity to give it legal effect, as a regular chain of transfer.

In the field-notes of the defendant's survey there is a call for the Whitehead league; and from the testimony, it appears to have been a matter of general notoriety in the community, at the time the survey was made, that the land was included in the survey now claimed by the plaintiffs. It does not, however, necessarily follow, from these facts, that there was any fraud or want of "intrinsic fairness and honesty," on the part of the owners of this certificate, in locating it upon this land.    Whitehead, when he came to the country, left his family, or at least the larger portion of it, in Louisiana, and after a residence of uncertain duration returned to that State.    Without at all questioning the validity of his title, it is certainly not unreasonable to conclude, that the parties locating their certificates may honestly and reasonably have concluded that this land, like many similar surveys, had reverted to the public domain, by reason of the abandonment of the country by the grantee; or, through his failure to bring his family with him, his title was illegally obtained, and therefore void.

But, if it were otherwise, the statute does not make the fact, that the owner of a certificate of head-right is aware, at the time of locating his certificate, that his survey conflicts with a prior valid grant, an exception to the running of the statute in his favor, or debars him from its protection, if the owner of the superior title fail to prosecute his suit within the time prescribed by law. It is not for this court to engraft such a provision on the statute, even if they deemed it desirable that it should have been so framed.

In answer to the third objection made to the defense relied upon by this defendant, it may be said, that although it is unquestionably true that the party who seeks to protect himself under this section of the statute must show that he has title or color of title, as defined in the law, or holds by chain of transfer under a certificate or land warrant, has possession of the land in dispute, and that the same has been held adversely to the plaintiff during the time prescribed, yet there is nothing which defines or limits the manner in which he must hold possession, or forbids his claiming the benefit, when held in any manner recognized by law, as sufficient to invest him with actual seizin and possession of the land. It is immaterial whether he does so by actual individual occupancy, or by a servant, agent, or attorney. If the possession be in privity with him, in his name and stead, and for and on his account, it is in law his possession, and he may be charged with the responsibility of it, and may avail himself of its benefits.

The court cannot say in this case, that the facts did not warrant the jury in concluding, that the defendant had thus held possession of the land.

The fourth objection is, that there was an interruption of the possession by the abandonment of the land by S. T. Foley, who had settled upon it as the tenant, and who seems to have acted as the agent of his father, the defend-

ant, W. G. L. Foley. The statement of facts shows that the possession was not abandoned in contemplation of law. It is a well recognized doctrine in this court, that the fact of the premises being left without an occupant for a short time, between the removal of one tenant and the entry of his successor, where there is no intention of abandoning the possession, does not stop the running of the statute. A short and temporary vacation of the premises is the ordinary and frequently the unavoidable incident of the change of tenants. If the attendant circumstances are such, that a reasonable and prudent man would not be induced to suppose the possession had been abandoned, it cannot be insisted that the running of the statute has been interrupted. The length of time during which there was no one on the land may have been unusually long in this case, but the very large amount of corn left in the crib until the subsequent occupant took possession of the premises, to say nothing of other circumstances, was sufficient to show that possession was asserted and continued by those who had previously maintained and claimed it. (Brumfield v. Reynolds, 4 Bibb, 388.)

There is no error in the judgment, and it is therefore

AFFIRMED.

SMITH, J., did not sit in this case.