# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-15-00492-CV

**Heather Martin and John Brown, Appellants**

**v.**

**Leonora Brown, Appellee**

FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY
NO. 30,658, HONORABLE JEANNE PARKER, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent; there is no reversible error in the trial court's order. While the Court professes reliance on the "unambiguous" text within the will's "four corners,"[1] further observing (correctly) that courts should not "'redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent,'"[2] the effect of its analysis is to add language to the will that the late Franklin Brown did not actually include himself.

Everyone agrees that Franklin's will, executed in August 2002, had the effect of granting Leonora, his wife since July 2000, a life estate in what has been termed the "San Saba property"—the real property owned by Franklin there on which has been erected a structure described as "a sheet metal building; half of which [] was an apartment, half of it was kind of

---

[1]  Slip op. at 3–4.

[2]  *Id*. (quoting *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (citing and quoting *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980))).

like a garage area"[3]—but subject to the limitation that Leonora not "fail" or "cease" to "occupy" that property. Were Leonora to "fail" or "cease" to "occupy" the San Saba property (or predecease Franklin), the property would pass under the will to appellants—Franklin's children from a prior marriage—in fee simple. Appellants sued Leonora seeking (as relevant here) a declaration that Franklin's will "grants the San Saba Property to [appellants] in fee simple, because Ms. Brown has failed to occupy the San Saba Property." Following trial, the trial court signed an order denying appellants relief on that claim and holding instead that "a life estate in favor of Leonora Brown [still] exists" in the San Saba property. The trial court did not make written findings of fact and conclusions of law, as the Court recognizes.[4]

While the proper construction of Franklin's will is pivotal to our disposition of this appeal, one cannot ignore the procedural posture that frames the operative facts to which the will is applied. As the claimants, appellants bore the burden of proving a failure or cessation by Leonora to "occupy" the property—Leonora was not required to prove affirmatively that she had continued to "occupy" or negate any failure to "occupy." Additionally, in the absence of written findings of fact and conclusions of law, we are to infer that the trial court made any findings of material fact (or, more precisely here, failed to find such facts) necessary to support its order and may affirm on

---

[3] As testified by appellant John Brown.

[4] Slip op. at 2 n.2. Likewise, while the Court emphasizes the trial court's email seemingly to aid the equities of its arguments, it ultimately concedes that such communications do not have the effect of written findings and conclusions and have no bearing on the standard and scope of our appellate review. *Id.* at 3 n.2 (citing *Cherokee Water Co. v. Gregg Cty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Mondragon v. Austin*, 954 S.W.2d 191, 193 (Tex. App.—Austin 1997, pet. denied)).

2

any legal theory consistent with the evidence.[5] Thus, we infer that the trial court did not find facts that legally would amount to a failure of Leonora to "occupy" the San Saba property. And because appellants bore the burden of proof, they can obtain the relief they seek on appeal—reversal and rendition granting their requested declaration—only if they can demonstrate that the evidence established conclusively (i.e., no reasonable person could conclude otherwise) facts equaling a failure to "occupy."[6] In analyzing such a challenge, furthermore, we are to view the evidence in the light most favorable to the trial court's findings (or failures to find), crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not.[7]

To meet their burden at trial, appellants focused narrowly on establishing two facts they viewed as negating Leonora's "occupancy" of the San Saba property. First, appellants elicited Leonora's acknowledgment that since 2004, the primary residence and claimed homestead of Franklin and her, and later her alone, had been a house in Copperas Cove. Appellants did not attempt, however, to negate that Leonora also resided on the San Saba property to some extent, nor to delineate the nature or extent of such use, and there was affirmative evidence that the property served as an overnight or weekend retreat. Leonora also testified to other acts of use and dominion that included stocking a supply of her clothes there (and some of Franklin's), resisting attempts by

---

[5] *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

[6] *See, e.g.*, *Allstate Ins. Co. v. Hegar*, 484 S.W.3d 611, 615 (Tex. App.—Austin 2016, pet. filed) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 815–17 (Tex. 2005)); *see also City of Keller*, 168 S.W.3d at 816 ("Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case.") (footnote omitted).

[7] *See City of Keller*, 168 S.W.3d at 822.

appellants to throw these possessions away, and paying taxes on and maintaining the property, including funding and overseeing extensive repair and clean-up work following a major plumbing mishap.[8] The second fact appellants sought to establish, also acknowledged by Leonora, was that she had executed a lease of the property a few weeks before trial. The lease in question permitted the tenant to use the premises both as a residence and as a "storage facility and a shop for minor repairs to motor vehicles." However, Leonora indicated that she had continued to keep clothes there.

As framed by this evidentiary and procedural backdrop, appellants' challenge to the trial court's order hinges on the propositions that Leonora had failed or ceased as a matter of law to "occupy" the San Saba property in the sense required by Franklin's will because either or both (1) it was undisputed that she had not used the property as her primary residence or homestead (as opposed to, e.g., an overnight or weekend home); and (2) it was undisputed that she had leased the property. The Court stops short of endorsing the first proposition, granting that it is "arguable" that "'occupy' might include periodic or weekend use"[9] and disclaiming any holding that "a person can never 'occupy' a property by holding in reserve for weekend use, as a second residence or the like."[10] And wisely so. Even if one accepts the Court's core premise that "occupy" when used with reference to real property always means "dwell on" or "reside in" (while "occupy" can certainly have

---

[8] This mishap occurred, Leonora testified, after someone had stuffed paper towels down a toilet to clog it, causing overflow that flooded the structure. Although Leonora noted that only she and appellants had keys to the structure at the time, she did not develop a theory further regarding the persons responsible for the damage.

[9] Slip op. at 6.

[10] *Id*. at 6 n.5.

4

this meaning in regard to real property,[11] the issue can become more complicated than the Court acknowledges[12]), nothing in the inherent meaning of "occupy" in the sense of dwelling or residing, the context of its use in Franklin's will, or other text of the will imposes the additional requirement of "occupy *as a primary residence or homestead*," as appellants assume.

The Court's judgment of reversal ultimately rests on its endorsement of appellants' second proposition, reasoning that "Leonora clearly relinquished such ['periodic or weekend'] use when she rented the property to her tenant, who now occupies the property."[13] But nothing in the will's use of "occupy" implies that Leonora must "occupy *personally*" rather than through a tenant or agent. For example, the Texas Supreme Court has long held that one can establish adverse possession by "occupying" land through a tenant.[14] Nor did Franklin see fit to prescribe any such limitation on how Leonora can "occupy" the property. The Court's inclusion of that requirement cannot rest on the "four corners" of the will's text alone.

---

[11] *See The American Heritage Dictionary of the English Language* 1218 (5th ed. 2011) (defining "occupy" as, inter alia, "[t]o dwell or reside in"); *Occupancy*, *Black's Law Dictionary* (9th ed. 2009) ("occupancy" includes "[t]he act, state, or condition of . . . residing in or on something").

[12] *See Occupancy*, *Black's Law Dictionary* (9th ed. 2009) ("occupancy" also includes "holding [or] possessing" and "denotes whatever acts are done on the land to manifest a claim of exclusive control and to indicate to the public that the actor has appropriated the land"); *see also Hernandez v. Heldenfels*, 374 S.W.2d 196, 198–99 (Tex. 1963) (discussing the "occupancy" of roadway by a subcontractor while rebuilding the road).

[13] Slip op. at 6.

[14] *See Dawson v. Tumlinson*, 242 S.W.2d 191, 195 (Tex. 1951) ("Adverse possession of land need not be by actual individual occupancy. If the possession is by tenant of the claimant it is in law the claimant's possession and he may avail himself of its benefits." (citing *Whitehead v. Foley*, 28 Tex. 1, 15 (1866))).

5

Beyond this, the Court insists that whatever "occupy" might mean precisely, "under these facts, Leonora is clearly not meeting the condition placed by Franklin on her continued assertion of a property interest."[15] It then emphasizes the concept that each will-construction case must "'stand under its own facts.'"[16] If by this the Court is referring to a perception of Leonora's level of activity on the San Saba property, it has overlooked the implications of the burden of proof and standard of review, which as explained effectively frame the dispositive issues as whether "occupy" as used in the will required primary residency and personal residency. And if the Court is suggesting that circumstances surrounding the will's execution must be considered in order to support its construction of "occupy,"[17] appellants made no attempt to develop evidence of such circumstances, and they, not Leonora, suffer the detriment of that failure.

The trial court did not err in impliedly failing to find that Leonora had ceased to "occupy" the property. I would affirm its judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Filed: August 25, 2016

_____

[15] Slip op. at 6 n.5.

[16] *Id*. (quoting *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016) (quoting *Taylor v. First Nat'l Bank of Wichita Falls*, 207 S.W.2d 428, 431 (Tex. Civ. App.—Fort Worth 1948, no writ))).

[17] *See Hysaw*, 483 S.W.3d at 8 ("[W]hen a term in a will 'is open to more than one construction,' a court can consider 'the circumstances existing when the will was executed.'" (quoting *Lang*, 35 S.W.3d at 639)).