26  239
87  535

## G. W. Todd v. Fisher and Miller.

If, upon inspection of a patent, or of the statute under which it issued, it appears that it was not authorized by law, or that the officer from whom it emanated had no authority to grant it, it cannot in any case be regarded as evidence of title.

But if a patent has been issued by an officer authorized to grant it, and whose duty it was to pass upon the evidence on which it issued, and some illegality has intervened in the preliminary proceedings upon which it is based—as, for instance in the issuance of the certificate or the making of the survey; such patent, it seems, can be impeached for such an illegality only by the State or by a party having color of title to, or an equitable interest in, the land patented.

When the Commissioner of the General Land Office has granted a patent on a certificate and survey, his decision is, it seems, conclusive upon all parties, except the State or those who have some color of title to, or interest in, the land.

Where a statute made it the duty of the commissioner to issue patents to colony contractors for their premium lands, upon the presentation to him of the certificates and surveys, it was not competent for him to go behind the statute and construe the original contract between the State and the contractors, for the purpose of inquiring whether the contractors had performed their contract, or whether the statute was not unconstitutional.

The ordinance respecting colonization contracts, appended to the State constitution, grants the privilege of setting forth "any plea that it would be competent for the State to plead" only to "adverse claimants;" who can only be such a party as has some equitable claim or color of right to the land, under which he would be authorized to acquire it but for the claim set up thereto by the colony contractors. A bare occupant, showing no interest in, or color of right to the land claimed by the contractors, is not entitled to the privilege conferred by the ordinance.

See this case for an exposition of the purpose of the privilege so conferred by the ordinance upon "adverse claimants."

The "alternate sections" reserved to the State in the colony contract of Fisher and Miller were subject to patent as premium or church lands.

Though the original contract of Fisher and Miller expired by its own limitation on the 1st day of September, 1846, yet in accordance with its provisions it was enlarged, and the time for its performance was extended to September 1st, 1847; and a survey made before the latter date, to which the contractors applied their premium certificate, was valid. But even if the survey had been made after the expiration of the contract, the subsequent acts of January 21st, 1850, and February 1st, 1854, recognized and adopted such survey, and directed the issuance of the patent thereon.

The act of January 21st, 1850, "for the relief of the German Emigration Company and their colonists," is not unconstitutional by reason of repugnancy to the ordinance respecting colonization contracts.

APPEAL from Gillespie. Tried below before the Hon. Thomas J. Devine.

This was an action of trespass to try title, instituted by the appellees against the appellant on the 10th day of January, 1856, for the recovery of six hundred and forty acres of land in Gillespie county, to which the plaintiffs had received a patent from the State on the 24th of October, 1854. The certificate on which the patent was granted, was issued to the plaintiffs on the 23d of August, 1851, for part of the "premium" lands allowed them under their colonization contract, and the acts of the legislature relating thereto. The tract located by this certificate and patented to plaintiffs, was one of the "alternate sections."

The defendant, in his answers, sought to impeach the validity of the plaintiffs' patent, by various allegations of the failure of the plaintiffs to perform and comply with the conditions and stipulations of their colonization contracts with the Republic of Texas. He further alleged that he had settled on the land, as a pre-

emptor, in August, 1853, and endeavored to get the district surveyor to survey it for him as his pre-emption claim, but the surveyor refused, assigning as a reason that it was an alternate section, and not subject to pre-emption. The defendant tendered the pre-emption fees into court, and prayed that the land be adjudged to him. He also interposed his claim for the value of his improvements, alleging his adverse possession for more than twelve months, and improvements made in good faith to the value of eighteen hundred dollars.

The other facts sufficiently appear in the opinion.

*Chandler & Turner* and *C. Reich*, for appellant.

*Allen & Hale*, for appellee.

MOORE, J. This suit was brought by the appellees for the recovery of six hundred and forty acres of land, for which a patent was issued to them by virtue of an act of the legislature, passed February 1st, 1854, to enable them to perfect titles to the lands for which certificates had been issued to them, under the act of January 21st, 1850.

The appellant insists that both these laws are unconstitutional, because, as he insists, they are in conflict with the provisions of the ordinance attached to the constitution; and that the patent was, consequently, issued without legal authority, and is, therefore, absolutely null and void. It can not be questioned, that when it appears from an inspection of the patent, or the statute under which it issued, that it was unauthorized by law, or that the officer from whom it emanated did not have authority to grant it, it cannot be regarded in any case as any evidence of title. (Pollard's heirs v. Files, 3 Porter, 47 ; Polk's lessee v. Wendell, 9 Cranch, 86 ; Patterson v. Winn, 11 Wheat., 380.)

But, if it emanated from competent authority, although in the preliminary proceeding upon which it is based—such, for instance, as the issuing of the certificate or making the survey—an illegality should intervene which eventuates in the grant of a patent to a party who otherwise would not have been entitled to receive

16

it; yet as it is made by an officer authorized to make the grant, and whose duty it is to pass upon the sufficiency of the evidence on which it is issued, it appears to be held, by the great weight of authority, that the State, or some one having a color of title, or equitable interest in the land, can alone attack the patent for such illegality. (Crommelin v. Minter *et al.*, 9 Port., 594; Hoofnagle v. Anderson, 7 Wheat., 212; Bush v. Ware, 15 Pet., 93; Jennings v. Whitaker, 4 Monroe, 50; Hunter v. Hemphill, 6 Missouri, 119; Sarpy v. Papin, 7 Id., 503; Winter v. Jones, 10 Geo., 206; Taylor v. Dougherty, 1 Watts & Serg., 326; Steiner v. Cox, 4 Barr, 13.)

If this is not so, all distinction between acts void and voidable is destroyed. But perhaps it may be said that the Commissioner of the General Land Office has no *authority to issue* a patent, unless the preliminary requisitions of the law have been complied with; and if he were to do so, it, consequently, should be held, when this is shown, not to pass the title. Such a conclusion would subvert in a great degree the efficacy of the patent, and would leave the party in a worse condition than while his proceeding was *in limine;* for then, if it were held erroneous, he might correct or amend it. The question suggested, however, does not present the correct view of the matter. The commissioner has the *authority*, or *power*, as the granting officer, but *should not* issue the patent unless the party is shown to be entitled to it. Neither should a court give an erroneous judgment. But could the commissioner, it may be asked, issue a patent to any one whom he might fancy, without a certificate or survey? Perhaps not; he probably would have no more authority to issue a patent without a certificate and survey, of apparent validity upon inspection, than a court has to render a judgment without a petition. But if a certificate and survey are presented to him, and he has acted upon them, it would seem that his decision, though erroneous, should be conclusive upon all parties, except the State or those who have some color of title to or interest in the land.

It was made the duty of the commissioner to issue this patent, upon the presentation of the survey and certificate, which had been previously granted by an officer authorized to do so by an

Todd v. Fisher and Miller.

act of the legislature. Was he authorized to go behind this, and construe the contract between the appellees and the government, and determine from it what facts must have been established by the appellees before they became entitled to ask for the premium lands, which it was stipulated they should receive; or that he should say that the law under which the certificate was issued was unconstitutional, because it did not require *all the facts* to be established before the officer authorized to issue it, which the contract required should be shown, before they were entitled to demand a title to the land, which it was agreed they should receive? Could the commissioner say that these additional facts had not been established to the satisfaction of the legislature in some other manner before the passage of the law under which the certificate was issued, or, at least, before the enactment of the statute by which it was made his duty to issue the patent?

But if it should be said, that the State is not estopped from questioning the validity of the patent, and may show that it was mistaken in the construction of its contract with appellees, and made the grant without full proof of a performance on their part of all its stipulations; and that by the terms of the ordinance third parties may " set forth any plea that it would be competent for the State to plead;" we think it may be correctly replied that this privilege is only extended by the ordinance to an "adverse claimant" of the land, who can only be such a party as has some equitable claim or color of right to the land, under which he would be authorized to acquire it but for the claim set up thereto by the colony contractors. The appellant is not such an adverse claimant. He appears to be a bare occupant, without any right or title. It is true, the statement of facts shows that he proffered to make oath that the land was vacant, and that he had settled upon it as a pre-emptor. But the deputy surveyor declined to receive his affidavit, or make the survey, for the reason that the principal surveyor held that the land could not be appropriated under a pre-emption claim, and he seems to have acquiesced in this view of the matter. At least he took no steps to enforce his supposed right to claim the land as a pre-emption settler, and he must be regarded as having abandoned his claim as such at the date of ap-

pellees' patent in 1854, if he could have previously maintained it. (Teal v. Huffman, 21 Tex., 781; Jennings v. DeCordova, 20 Tex., 508.) We may as well, however, here remark that the view taken by the surveyor of the question was, in our opinion, correct. The land was a part of the sectionized portion of the colony; it had been withdrawn from the mass of the public domain, and set apart for a specific purpose; and was not, therefore, without special authority, subject to appropriation in any other manner. (Kemmell v. Wheeler, 22 Tex., 77; Moreland v. Atchison, 24 Tex., 164.)

It is to be, also, considered, that this authority to third parties, in suits by or against colony contractors, to plead anything that the State could, is contained in a proviso to the section of the ordinance directing suits to be brought by the Attorney General or District Attorney to have the contracts declared void for fraud and illegality in execution, as well as for the failure of the contractors to comply with their stipulations; and that it was evidently the belief of the convention that it would ultimately be shown, upon the trial of these suits, that the contractors were not entitled to any of the rights or privileges claimed by them under the contracts. But it might be years before these suits could be brought to a conclusion; and in the meantime, the "adverse claimants" of lands, within the colony boundaries, might be harrassed by suits by the contractors, or embarrassed in the assertion of their titles. These provisions, then, must surely be understood as conferring this privilege upon the adverse claimants while the rights of the contractors were *in limine.* It could not have been the intention, if the contractors established the legality of their contracts and a strict compliance by them with their stipulations, and the legislature had in consequence thereof granted to the contractors the lands they claimed, yet for all future time that the contractors, or any parties claiming by or through them in any suit by or against them, involving any of these lands, should still be bound to establish the validity of the contracts, and a performance of their conditions.

But without dwelling further upon these general views, we will briefly advert to the objections to appellees' patent, which have

been presented by appellant as grounds for a reversal of the judgment.

He insists, first, that the patent is void, because it is for one of the alternate sections, as they are called; and that the alternate sections were, by the colony contract and the statutes, passed with reference thereto, expressly reserved to the State; and that the patent was issued, therefore, by the Commissioner of the General Land Office without authority, and in direct violation of law. This objection is, however, based upon a mistaken construction of the contracts. Its terms are "that each alternate section of land, *except for the premium and church lands*, shall be reserved and set apart," &c. If there were any doubt about the construction that this stipulation should bear, it would be entirely dissipated by an inspection of other parts of the contract, which show beyond cavil that the church lands were necessarily intended to have been located on one of the alternate sections.

It is also objected that there was no legal survey to which the certificate could have been applied; and to sustain this position, it is insisted that the contract expired by its own terms on the 1st of September, 1846, and that the survey was not made until 1847. But this objection is also dissipated by a further inspection of the contract. It is true the original contract, which was for the introduction of six hundred colonists, expired three years from its date, and this would be on the 1st of September, 1846, as is insisted by the appellant. But there was an additional stipulation in it, that appellees, by giving notice at any time within twelve months from the date of the contract, might increase the number of colonists to be introduced to six thousand, and if they should do so, this should operate as a new contract to introduce that number, bearing date twelve months from the date of the original contract. That the notice was given, and the contract extended until the 1st of September, 1847, is abundantly shown by the subsequent acts of the legislature recognizing it as a contract for the introduction of six thousand colonists, with that time for its completion. (Hart. Dig., art. 2139.) Before the expiration of which period, it is admitted, the survey was made. If, however, it had been made subsequently to the expiration of the contract,

SUPREME COURT.

Todd v. Fisher and Miller.

the acts of January 21st, 1850, and February 1st, 1854, recognized and adopted it, and directed the patent to be issued upon it.

It is, also, urged that the appellees could not recover, because the act of January 21st, 1850, relieved them from the forfeiture incurred by their failure to introduce the colonists into the limits of the colony within the period of three years from the date of the contract. · And as this law is the foundation upon which their patent must rest, as under it the certificate was issued, and as it is manifest, as it is said, from an inspection of the statute, that it contravenes the provisions of the ordinance, the court should hold the patent void. This objection has been, we think, sufficiently answered in what has been previously said with reference to the powers and duty of the commissioner in issuing the patent. For if the court should say that it is not *prima facie* evidence of title, the commissioner acted without authority in issuing it. We will further observe, however, that the language of the contract with reference to the settling of the colonists within the colony, is somewhat vague. It is as follows : " the said party of the second part contracts and agrees to introduce, or cause to be introduced, a colony of six hundred families, or single men over seventeen years of age, within three years from the date of this contract; and to have the same settled within the limits of the tract of land hereinafter specified." Now, by this stipulation, appellees insist that while they were expressly required to introduce the colonists into the country within three years, the time was not specified within which they were obliged to settle them within the colony; that the fact that neither the colonists or contractors could get titles to the land which they were to receive until this was done, was regarded by the government as a sufficient guarantee of its performance without undue delay. It is evident, at least, that a failure to introduce one-third of the colonists into the Republic within the period of twelve months from its date, (subsequently extended six months longer,) was the only express ground of forfeiture stipulated for in the contract; and that this was the only one alleged in the suit brought by the Attorney General, in obedience to the ordinance of the convention; and that no other has, at any time, been established or expressly asserted by the

State.   May it not, then, be said with propriety, that when one of the parties to the contract has recognized the acts done by the other as a performance, and there has been a final adjustment to their mutual satisfaction, it is too late to raise the question as to the correctness of the construction placed upon the contract, or whether its conditions have been complied with?   If so, it must follow that if the State was seeking to annul the patent granted to the appellees, it could only do so by showing that it had been obtained by fraud, or that the law under and by virtue of which it had been issued was clearly unconstitutional.   There is not the slightest pretence in the record upon which to base a charge of fraud.   And the law to which exception is taken cannot be said to extend the time for settling the colony; nor does it, we think, relieve the contractors "from the failure of the conditions, or the forfeiture accruing from the non-compliance with the contract." (Ordinance, sec. 2.)   These are the only inhibitions upon legislative interposition.   The most manifest object, if not the sole purpose of this section of the ordinance, was to restrain the legislature from protecting the contractors by statutory relief, against the judgments that otherwise would, probably, as the convention thought, be rendered against them, in the suits that the previous section declared should be instituted; and that the legislature should not by an interposition in their behalf, prolong the continuance of the contracts, and thus enable the contractors to assert an imperative obligation upon the State against its future policy; keeping in force immense monopolies of the public domain, injurious to the public interest and unjust to other claimants.   But when the contracts have ceased to have any further effect; when they have come to an end, either by a forfeiture or by a performance either in or after the expiration of the time agreed upon, what constitutional provision or rule of law prevents the legislature from making such a settlement with the contractors as may comport with its sense of justice, or, if it sees fit to do so, from making them the objects of its bounty?

The appellant, as we have already shown, was not entitled to claim the land as a pre-emptor, upon which he had settled when appellees' patent was issued; and he could not, consequently, be

regarded as a settler in good faith; and it is, therefore, unnecessary to examine the charge upon that point, of which he complains. Nor could the admission of the transcript of the suit of the Governor v. Fisher and Miller, in any manner influence the result of the verdict; and the ruling of the court in this particular, is, therefore, whether right or wrong, wholly immaterial.

There is no error in the judgment of the court below, and it is therefore affirmed.

Judgment affirmed.