J. C. LEAGUE v. MARY A. ROGAN ET AL.

(Case No. 4629.)

1. PATENT — VOID AND VOIDABLE.— A patent issued by the proper officers of the state upon a valid land certificate, though issued to one claiming under a forged transfer of the certificate, conveys title within the meaning of the statute of limitations of three years. One having a pre-existing right attempted to be conveyed by the forged transfer is not concluded by the issuance of the patent, nor is the state; but as to all other persons the patent is conclusive in favor of the patentee.

2. SAME.— Such patent is not void, but voidable only; and the real owner of the certificate, whose transfer thereof was forged, may elect to permit the patent to stand, and by suit have judgment rendered vesting legal title in himself by reason of

his equitable title existing prior to the patent; or he may, by proceedings begun in time, procure a cancellation of the patent and the issuance of another to himself. This case distinguished from Wright v. Daily, 26 Tex., 730; Harris v. Hardeman, 27 Tex., 249; Eliot v. Whitaker, 30 Tex., 420, and other cases cited.

3. Same — Limitation.—Such a patent, so issued upon a forged transfer of a certificate, constitutes such title as will support the plea of limitation of three years. Smith v. Power, 23 Tex., 33, discussed and distinguished from this case.

4. Patent — Title.— A patent issued on a valid certificate by the officers authorized to investigate the patentee's right to it, and by its issuance to extend title, passes to the patentee the naked legal title. It does not pass the paramount title if the certificate on which it issues belongs to some other person than the patentee; but it does pass, as against the government, title valid in itself.

5. Void and voidable.— A title effective against some persons, but not against all persons, is not void but voidable.

6. Cases reviewed and discussed.— Veramendi v. Hutchins, 48 Tex., 531, and Burleson v. Burleson, 28 Tex., 417, reviewed and discussed in regard to limitation.

7. Limitation.— Even a link in a chain of title subsequent to patent which is not void, but voidable, will constitute a link in the chain of "title" within the meaning of the statute of limitation of three years; and this even though such voidable deed had its origin in a transaction between the grantor and grantee, which was fraudulent as to an estate represented by the grantor; citing Pearson v. Burdett, 26 Tex., 172.

8. Same — Statute construed.— An occasional invasion of the county in which land is situate by hostile bands of Indians, making forays (courts continuing to be regularly held therein), is not that "forcible occupation of the county . . . by a public enemy," contemplated by the statute, that would stop the running of the statute of limitations. Pasch. Dig., art. 4621.

9. Stale demand.— A patent issued on a forged transfer of a certificate in 1847, under which almost constant adverse possession was held until 1880, when those claiming the former paramount equitable title brought suit for the land. *Held*, that the claim of plaintiffs was stale, and that the courts should not enforce it; following De Cordova v. Smith, and other cases cited.

Appeal from San Saba. Tried below before the Hon. A. O. Cooley.

A statement of the lengthy pleading in this case, or of the evidence, which was voluminous, would not make more plain the legal principles announced. Enough is stated in the opinion of the facts to make the conclusions announced understood. Appellants were plaintiffs below.

*Carleton & Morris*, for appellants. on the proposition that the patent was void as to plaintiff's rights, cited Hamilton v. Avery, 20 Tex., 633–37; Lewis v. Mixon, 11 Tex., 564; Sherwood v. Fleming, 25 Tex. Sup., 408; Wright v. Hawkins, 28 Tex., 470; Burleson v. Durham, 46 Tex., 157; De Montel v. Speed, 53 Tex., 342; Wyllie v. Wynne, 26 Tex., 44; Sampeyreac & Stewart v. U. S., 7 Pet., 241; Wright v. Daily, 26 Tex., 730; Thompson v. Cragg, 24 Tex., 582;

Cunningham v. Frandtzen, 26 Tex., 34; Whitehead v. Foley, 28 Tex., 268; Kelly v. Medlin, 26 Tex., 48; Marsh v. Weir, 21 Tex., 97; Veramendi v. Hutchins, 48 Tex., 533; 2 How., 318; Wilson v. Palmer, 18 Tex., 592; Urket v. Coryell, 5 Watts (Pa.), 60.

*Townes & Burleson*, for appellee, cited 26 Tex., 376; 28 Tex., 145; 43 Tex., 628; 50 Tex., 383; 22 Tex., 376; 10 Tex., 385, 391; 26 Tex., 172; 28 Tex., 14.

STAYTON, ASSOCIATE JUSTICE.—In the view which we take of this case, a consideration of many of the assignments of error becomes unnecessary.

The land in controversy was patented to William O'Connell as the assignee of Alfred Morris, on December 22, 1847, and the appellees claim through conveyance made by the patentee O'Connell to David F. Brown, on the 12th of September, 1857. Whatever right the appellants have is based upon a conveyance to their ancestor, Thomas M. League, of the certificate upon which the land was granted, which was made in 1839.

The court found in favor of all of the appellees, upon their pleas of limitation of three, and against all of the appellees, except Cunningham, upon their plea of limitation of five years.

The court also found that the conveyance purporting to be from Isaac Campbell to Joseph Rowe, of the certificate upon which the land was granted, was a forgery. O'Connell claimed the certificate under a conveyance to him from Rowe.

The evidence justified the finding of the court that such possession had been shown as would support the claims of the appellees under their plea of three years' limitation.

It is claimed, however, that the appellees could not avail themselves of the plea of three years' limitation, because the transfer of the certificate upon which the patent issued, from Isaac Campbell, to whom it was issued as assignee, to Joseph Rowe, from whom the patentee purchased it, was a forgery. In other words, it is claimed that a patent issued to an assignee who held the certificate upon which it issued by virtue of a conveyance to him, made by one who held under a forged transfer, such patentee having no notice of such forgery, does not convey to the patentee such title or color of title as will sustain a plea of three years' limitation.

In this case the appellees claim under "a regular chain of transfer from or under the sovereignty of the soil," which, in the language of the statute, means "title" as distinguished from "color of title," unless it can be held that the patent is void.

That the patent was issued by officers empowed to issue patents cannot be questioned; that a patent could legally issue upon the certificate issued to Isaac Campbell as assignee is certainly true; and that the commissioner was empowered to pass upon the sufficiency of the transfers of the certificate upon which the patent is based has often been decided. M tchell v. Bass, 26 Tex., 376; Todd v. Fisher, 26 Tex., 243; Styles v. Gray, 10 Tex., 505.

If the commissioner errs in his judgment as to the validity of a transfer of a certificate, the right of one having prior right cannot be concluded by his action in issuing a patent to a wrong person, nor will his act preclude the state from setting the patent aside; yet as against all persons save those having rights prior to the issue of the patent, and the state, the patent is conclusive of the right of the patentee. Todd v. Fisher and Miller, 26 Tex., 242; Mitchell v. Bass, 26 Tex., 376.

When power exists in the officer to act, his erroneous action is not void, but at most is only voidable; otherwise any person may attack a patent for errors of judgment in the officer empowered to issue it, and that which is intended to be among the highest evidence of title be open to question by any one.

In the case of Gullett v. O'Connor, 54 Tex., 416, it was held that a patent which the commissioner was prohibited by the constitution to issue was not void.

The patent under which the appellees claim is regular in form, issued by officers empowered to issue patents, and upon a valid claim against the state for land; and neither the forgery of a remote transfer of the certificate upon which it issued, nor the failure of the commissioner to detect that forgery, can render it void.

By proper procedure, had in proper time, the true owner of the certificate could have had the patent canceled and another issued to himself, or he could have permitted the patent to stand, and have had the legal title vested in the patentee by that patent vested in himself by reason of his equitable title existing before the patent was issued, and by such union of the legal and equitable titles, get perfect title. Gullett v. O'Connor, 54 Tex., 416. If the patent was void, title could not thus be perfected, for the union of an imperfect or equitable title with a nullity can never make a title better than its constituents.

There was no vice in the title of the appellees subsequent to the issue of the patent, as there was in Wright v. Daily, 26 Tex., 730; Harris v. Hardeman, 27 Tex., 249; Eliot v. Whitaker, 30 Tex., 421; Brown v. Flynn (Tyler Term, 1882); Long v. Brenneman

(Austin Term, 1883), in which it was held that persons claiming by inheritance or conveyance from one who had formerly parted with his title, could not be said to hold by "title or color of title," as those terms are used in arts. 3191, 3192, R. S. This is so held upon the ground of want of power in the grantor, resulting from his prior sale and consequent want of title, either legal or equitable, to pass any title whatever to another.

Here the patent passed the legal title to the person under whom the appellees hold by regular chain of transfer, and the vice in the title, if there be one, lies back of the patent, which is the sole source, in this case, of legal as distinguished from equitable or imperfect title, and even of that vice it does not appear that the patentee or those holding under him had any notice, which would not be important upon the question of limitation.

In treating of the character of title which will support a plea of limitation of three years, in the case of Smith v. Power, 23 Tex., 33, Wheeler, C. J., said: "To constitute such title or color of title, there must be chain of transfer from or under the sovereignty of the soil. This necessarily presupposes a grant from the government, as the basis of such transfer, and the grant must be effectual to convey to the grantee whatever right or title the government had in the land at the time of making the grant. It need not necessarily carry with it the paramount title, but it must be title, as against the government, valid in itself, when tested by itself, and not tried by the title of others. It must have intrinsic validity as between the parties to it, though it may be relatively void as respects the rights of third persons. If it be absolutely void, a nullity, it cannot be said to be a grant, or the basis of a transfer of title from the government."

The grant under consideration in that case was one in which there was a want of power in the officer who made the grant, and his act passed nothing whatever to the grantee.

In the case before us there was no want of power in the officer who issued the patent; his act passed to the patentee the naked legal title, which was all that the government had to convey at the time the patent issued. It did not pass the paramount title, if the certificate upon which it issued then belonged to League and not to O'Connell, but it did pass title as against the government, valid in itself, when tested by itself, and not tried by the equitable title claimed to have been then vested in Thomas M. League. It passed title as against every other person than Thomas M. League, or some one claiming under him.

Against attack by a junior title it would have been impregnable; such title is not void; for a void claim of title is subject to successful attack by any one who can show a right junior in point of time to such nullity; it gives no protection, *as title*, against any person; and it may safely be said, that a title effective against some persons, but not against all persons, is, at most, only voidable.

The difference in a vice in link of chain of title preceding a patent, and vice in some conveyance after the patent has issued, as respects the question of limitation, may be illustrated by the cases of Veramendi *v.* Hutchins, 48 Tex., 531, and Burleson *v.* Burleson, 28 Tex., 417. In the case first named it was held that a person claiming title to land, community property, sold by a husband after the grant and after the death of the wife, could not, in a suit by the heirs of the wife for one-half of the land, successfully defend under the statute of limitation of three years; for the reason that, as to one-half, the purchaser had neither *title* nor *color of title*. This resulted solely from the want of power in the grantor to convey, and the chain of transfer between the patent and the claimant, under such conveyance, is broken.

In the last named case, after the death of the wife, the husband sold a land certificate which was community property, and a patent for the land upon which it was located subsequently issued to his vendee, and it was held that such patent constituted "title" from the sovereignty of the soil within the meaning of the statute, and that in favor of the patentee it would, with the requisite possession, support a plea of three years' limitation.

In that case the paramount title to one-half of the land was in the heirs of the wife, as in this case the superior equitable title was in Thomas M. League.

In the case of Veramendi *v.* Hutchins, *supra*, the vice was subsequent to the grant; but in Burleson *v.* Burleson, as in the case before us, the vice was in conveyance of the certificate prior to the patent, which is the sole source of legal title in this case, and beyond which no one need go in deraigning title from the sovereignty of the soil as the basis for limitation. The officer who issued the patent, having the power to issue it, it is *title*, and the fact that there may have been a superior equity cannot make it less. It passed the legal title, which was all the state had, and, as will be hereafter seen, it is not even necessary, as against all other persons, that the patent should even pass the legal title to the patentee, to constitute the patent "*title*," within the meaning of the statute of limitation.

In case of a location and patent upon land, title to which had

already passed from the government by a prior grant, perfect in every respect, no one would doubt that a possession under the junior grant from the government, for the requisite period of three years, would give a perfect defense against the owner under the old grant. Marsh *v.* Weir, 21 Tex., 110; Galan *v.* Goliad, 32 Tex., 776; Whitehead *v.* Foley, 28 Tex., 12; Stafford *v.* King, 30 Tex., 277. Yet in that case there would not only be an older equitable, but also an older legal, title outstanding, against which the junior grant would be *title* within the meaning of the statute.

Then it is not even necessary that the state, *in fact*, pass the legal title by the patent; for it cannot do so when it has once parted with all title legal or equitable; and it is sufficient that the patent purports to pass the legal title, and does pass all the title the state has, or can convey. Darilla *v.* Mumford, 24 Howard (U. S.), 23. The patent to O'Connell was not void.

It seems that even a link in a chain of title subsequent to the patent, which is not void, but voidable, will constitute a link in the chain of "title" within the meaning of the law now under consideration; and this even though such voidable deed had its origin in a transaction between the grantor and grantee which was fraudulent as to an estate represented by the grantor. Such is the theory upon which the case of Pearson *v.* Burdett, 26 Tex., 172, was disposed of.

In that case an administrator *de bonis non* brought suit to set aside a deed made by a former administrator, under an order of the probate court, to Burdett, which it was alleged was made through fraudulent collusion between the administrator and Burdett.

Among other defenses Burdett pleaded the statute of limitations of three years, and the court, Roberts, Justice, delivering the opinion, said: "We think it is a good defense, notwithstanding the jury may have believed that the fraud in Burdett's deed was sufficiently proved. As a mere question of the validity of Burdett's title, it is true, as stated in the opinion above quoted, the plaintiff was in a situation to avoid Burdett's deed for fraud and have it set aside, being the administrator of Silsbee's estate. Had some one else brought suit against Burdett, claiming the land, not under Silsbee, but under a junior patent granted to some one else, then he would not have been in a situation to avoid Burdett's deed for fraud. It was in this point of view that the remark was made in the opinion quoted, that the plaintiff could avoid Burdett's deed by showing it to be fraudulent. It was made with reference to the validity of Burdett's title, and not with reference to its capacity to support the defense of

the statute of limitations of three years. It simply asserted the principle that Burdett's deed was voidable, and the facts which constituted its voidableness could be shown in this suit, so as to have the legal title divested out of Burdett and returned to the heirs and devisees of Silsbee. The administrator having power to sell, and having sold the land, the legal title passed to Burdett, and from the time it was recorded he held under a regular chain of title from and under the sovereignty of the soil. It was a good and valid title against all the world, except the administrator of Silsbee's estate or the heirs or devisees of Silsbee. As to these it was voidable, not void; as to these it stood *prima facie* as a good title until they should institute a suit in some competent court, and show such facts as would establish, not that the legal title had not passed, but that Burdett had fraudulently obtained the legal title to the land, and thereby obtain a judgment of recovery, setting aside the deed and reinvesting the title in those thus. shown by the adjudication to be equitably entitled to it. . . . It may be the inferior title as compared to that which the vendor can assert; still it is a title, until destroyed by the establishment of the superior title."

In that case, as in this, there was no want of power in the persons who executed the instruments which conveyed the legal title, but there was an erroneous and wrongful exercise of the power possessed; and in these things, in a multitude of cases, have we the criterion to determine whether an act is void or only voidable.

It will be unnecessary to consider the sufficiency of the evidence to sustain the plea of ten years' limitation. It is claimed that limitation did not run, on account of the incursions of hostile Indians, during a part of the time appellees and those through whom they claim have been in possession.

We are of the opinion that an occasional invasion of the country in which the land is situated, by hostile bands of Indians, which made it unsafe to live in the country, would not permit the running of the statute of limitations. Under the fourteenth section of the act of February 5, 1841 (Pasch. Dig., 4621), which prescribes the period which will bar the right of entry, it is provided that, "if forcible occupation of the premises, or county containing them, by a public enemy prevent entry, the time of such disability shall not be computed." This could not have been intended to apply to such temporary forays as were frequently made upon parts of the frontier of this state in former years by hostile Indians; but to secure such occupation by an armed force from some foreign government,

with which this country might be at war, as would interfere with the regular operation of the government in the part of the country so occupied. Bouvier's Dictionary, "Public Enemy." The record shows that in the county in which the lands are situated, the courts have at all times been regularly held since the occupation through which the appellees' claim began, and their possession might have been interrupted by suit at any time. Under such circumstances it could not be held that limitation did not run, even if Indians were, within the meaning of the law, "public enemies."

We are further of the opinion that, as the patent issued to O'Connell in 1847, and that since the year 1857 there has been an almost constant hostile possession of the land by the appellees and those under whom they claim, that even if there had been such occasional breaks in the possession as would prevent the bar of the statutes of limitation, the claim of the appellants, never asserted by suit until May, 1880, is a stale claim, which the courts would not enforce, and especially so when it is remembered that the title to the certificate, although once in League, may have been transferred to O'Connell without writing.

Against a claim so old, where there has been a constant, open assertion of hostile right, and no effort made to repel it for about thirty-three years, it must be held that it is a stale claim. Carlisle v. Hart, 27 Tex., 352; De Cordova v. Smith, 9 Tex., 150; Johnson v. Newman, 43 Tex., 642; Glasscock v. Wilson, 26 Tex., 154; Boone v. Chiles, 10 Peters, 223; Piatt v. Vattier, 9 Peters, 414; 2 Story's Equity, 1520.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered May 11, 1883.]