## WITHERSPOON v. OLCOTT et al.

(Circuit Court of Appeals, Fifth Circuit. December 16, 1902.)

No. 1,152.

1. PUBLIC LANDS—PATENTS—IRREGULAR SURVEY.
   A patent regularly issued to state lands in Texas is not void, though the survey on which it is based was made by a surveyor working outside his regular district.

2. SAME—TRESPASS TO TRY TITLE.
   A title based on a patent issued on a survey of state lands made by a surveyor outside of his district will prevail in an action of trespass to try title against a defendant claiming under an alleged prior conflicting patent, the description in which does not identify the same with the land in controversy.

In Error to the Circuit Court of the United States for the Northern District of Texas.

W. O. Davis, for plaintiff in error.

A. M. Carter and T. D. Cobbs, for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge. This is an ordinary action of trespass to try title, resulting in a judgment in favor of Frederick P. Olcott, defendant in error, for five sections of land in block A of formerly Hardeman, now Foard, county, patented to the Houston & Texas Central Railway Company in November, 1881, and four sections in block 44 of said county, patented to said railway company in September and October, 1877. Olcott claimed under a quitclaim deed from the receiver of said railway company,—sufficient, however, to vest in him whatever right the railway company had to said lands. The patents to the railway company were predicated upon certificates issued to said railway company on the 1st day of July, 1872, and upon surveys made by the surveyor for the Jack land district on the 25th day of September, 1872, and on the 18th day of December, 1873, which surveys were claimed to be void because Hardeman county was not in his district nor under his jurisdiction, as decided by the supreme court in Cox v. Railway Co., 68 Tex. 226, 4 S. W. 455, and in other subsequent decisions. Afterwards, in November, 1874, while Hardeman county was in fact in his district and under his jurisdiction, the

surveyor for the Jack land district made surveys for other persons, more or less conflicting with the nine surveys previously made for the said railway company. While these surveys may be valid and superior to the surveys made for the said railway company, all of them are unpatented, except the B. H. Epperson survey, patented on the 8th day of May, 1876, the McGuire Chessau survey, patented on the 22d day of October, 1875, the Houston Tap & Brazoria Railway Company survey, patented on December 4, 1875, the Memphis, El Paso & Pacific Railway Company survey, patented on December 20, 1875, and the Wm. T. Dillingham survey, patented on March 16, 1876, which patents are older than the patents to the Houston & Texas Central Railway Company. The plaintiff in error introduced certified copies or sketches from the maps of Foard county in use in the land office, tending to show in some degree the nature and extent of the conflict between these surveys and the previous surveys made for the Houston & Texas Central Railway Company, but the conflict was not sufficiently shown for either court or jury to act upon same.

The court instructed a verdict for Olcott upon the theory that the patents to the railway company were not void, but certainly vested in the company the legal title to the land, as against outstanding equities in the hands of strangers, and against even superior outstanding legal title not clearly shown to conflict. The correctness of the court's instruction to find a verdict for the plaintiff below has been brought here for review, and, after full consideration, we are of opinion that there was no error in the instruction given.

Without undertaking to decide upon the much-argued question as to whether in 1872 E. Boon, a surveyor of Jack county, and of the Jack county land district, and perhaps claiming to be de facto surveyor of Hardeman county, had a right to make the surveys in Hardeman county (now Foard county) upon which the patents to the Houston & Texas Central Railway Company were based, we think it clear that the patents issued upon such surveys were not void. There is no question that the surveys were made, that they were filed in the general land office in accordance with the law, and that upon them the patents were apparently regularly issued. It seems to be well settled in Texas that patents issued under such circumstances cannot be treated as void. See Styles v. Gray, 10 Tex. 503, 508; Deen v. Wills, 21 Tex. 642; Todd v. Fisher, 26 Tex. 239; O'Neal v. Manning, 48 Tex. 403; Johnson v. Eldridge, 49 Tex. 507; Gullett v. O'Connor, 54 Tex. 408; Gambrell v. Steele, 55 Tex. 582; League v. Rogan, 59 Tex. 430; Miller v. Moss, 65 Tex. 182; Decourt v. Sproul, 66 Tex. 371, 1 S. W. 337.

The opinion of Judge Moore in Todd v. Fisher, supra, is so directly applicable to the facts in the present case that we quote the same as conclusive, as follows:

"This suit was brought by the appellees for the recovery of six hundred and forty acres of land, for which a patent was issued to them by virtue of an act of the legislature passed February 1, 1854, to enable them to perfect titles to the lands for which certificates had been issued to them under the act of January 21, 1850. The appellant insists that both these laws are unconstitutional, because, as he insists, they are in conflict with the provisions of the ordinance attached to the constitution, and that the patent was conse-

quently issued without legal authority, and is therefore absolutely null and void. It cannot be questioned that when it appears from an inspection of the patent, or the statute under which it issued, that it was unauthorized by law, or that the officer from whom it emanated did not have authority to grant it, it cannot be regarded in any case as any evidence of title. Pollard's Heirs v. Files, 3 Ala. 47; Polk v. Wendal, 9 Cranch, 87, 3 L. Ed. 665; Patterson v. Winn, 11 Wheat. 380, 6 L. Ed. 500. But if it emanated from competent authority, although in the preliminary proceeding upon which it is based—such, for instance, as the issuing of the certificate or making the survey—an illegality should intervene which eventuates in the grant of a patent to a party who otherwise would not have been entitled to receive it, yet as it is made by an officer authorized to make the grant, and whose duty it is to pass upon the sufficiency of the evidence on which it is issued, it appears to be held, by the great weight of authority, that the state, or some one having a color of title or equitable interest in the land, can alone attack the patent for such illegality. Crommelin v. Minter, 9 Ala. 594; Hoofnagle v. Anderson, 7 Wheat. 212, 5 L. Ed. 437; Brush v. Ware, 15 Pet. 93, 10 L. Ed. 672; Jennings v. Whitaker, 4 T. B. Mon. 50; Hunter v. Hemphill, 6 Mo. 119; Sarpy v. Papin, 7 Mo. 503; Winter v. Jones, 10 Ga. 206, 54 Am. Dec. 379; Taylor v. Dougherty, 1 Watts & S. 326; Steiner v. Coxe, 4 Barr, 13. If this is not so, all distinction between acts void and voidable is destroyed. But perhaps it may be said that the commissioner of the general land office has no authority to issue a patent unless the preliminary requisitions of the law have been complied with; and, if he were to do so, it consequently should be held, when this is shown, not to pass the title. Such a conclusion would subvert in a great degree the efficacy of the patent, and would leave the party in a worse condition than while his proceeding was in limine; for then, if it were held erroneous, he might correct or amend it. The question suggested, however, does not present the correct view of the matter. The commissioner has the authority or power, as the granting officer, but should not issue the patent unless the party is shown to be entitled to it. Neither should a court give an erroneous judgment. But could the commissioner, it may be asked, issue a patent to any one whom he might fancy, without a certificate or survey? Perhaps not. He probably would have no more authority to issue a patent without a certificate and survey, of apparent validity upon inspection, than a court has to render a judgment without a petition. But if a certificate and survey are presented to him, and he has acted upon them, it would seem that his decision, though erroneous, should be conclusive upon all parties, except the state, or those who have some color of title to or interest in the land."

There does not seem to be any dispute that an outstanding equity will not avail a stranger in defense against the legal title. See Shields v. Hunt, 45 Tex. 435, and Gullett v. O'Connor, supra.

The two certified land-office sketch maps introduced in evidence by the defendant in the court below may show to the initiated a conflict, and the extent thereof, between the patents issued to the Houston & Texas Central Railway Company and the prior patents to Dillingham, Epperson, McGuire, Chessau, and others; but, from our examination, no court or jury could tell therefrom the extent of any such conflict.

No doubt, the defendant in an action of trespass to try title may show an outstanding legal title in another; but, to be available, he must identify the same with the lands in controversy.

As the instruction to find a verdict for the plaintiff in the court below is found to be correct, none of the other questions involved in the case need consideration.

The judgment of the circuit court is affirmed.