## PAYNE et al. v. ELLWOOD.

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1914.)

1. ADVERSE POSSESSION (§ 80*)—COLOR OF TITLE.

The owner of a junior survey may acquire title to land covered by a senior survey under the five-year statute of limitations by his adverse holding of land in conflict, even though he only pays taxes upon his own survey, and there is nothing on the ground or field notes showing conflict, if the field notes and survey of the junior grant covered the disputed strip.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 463–467; Dec. Dig. § 80.*]

2. ADVERSE POSSESSION (§ 80*)—COLOR OF TITLE—WHAT IS SUFFICIENT.

Where a deed describes land by section and certificate number, but refers to the patent and field notes, which otherwise designate the land, for the description of the land, the record of such deed is sufficient notice of an adverse holding to the extent of the boundaries in the field notes.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 463–467; Dec. Dig. § 80.*]

3. JURY (§ 31*)—JURY TRIAL—RIGHT TO.

In trespass to try title, where the question of disputed boundary was submitted to the jury, but defendant's claim that his possession of the land in controversy had ripened into adverse title under the five-year statute of limitations was not submitted to the jury, the trial court cannot, after a verdict for plaintiffs on its own finding, under what was claimed to be uncontroverted evidence, that defendant held adversely under color of title, render judgment for defendant, for that would deprive plaintiffs of a jury trial; the court's power over the verdict being limited to the direction of an appropriate verdict.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 204–219; Dec. Dig. § 31.*]

4. APPEAL AND ERROR (§ 1177*)—DISPOSITION OF CASE ON APPEAL.

Where the Court of Appeals cannot find to its satisfaction that there was no issue presented by the evidence which should have been submitted to the jury, which was not submitted, it cannot render the judgment which should have been rendered below, where the trial court improperly rendered judgment on its own findings on a question not submitted to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4597–4604, 4606–4610; Dec. Dig. § 1177.*]

5. APPEAL AND ERROR (§ 1170*)—REVERSAL—TECHNICAL ERROR.

Under court rule 62a (149 S. W. x), prohibiting reversals for nonprejudicial error, the Court of Appeals cannot deny a reversal where the trial court, after verdict for plaintiffs, improperly rendered judgment upon its own findings on a matter not submitted to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066–4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

Error from District Court, Hale County; L. S. Kinder, Judge.

Separate suits by Kate S. Payne and J. F. Sageser against W. L. Ellwood, which were consolidated. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

L. W. Dalton, C. D. Russell, and Geo. L. Mayfield, all of Plainview, for plaintiffs in error. Mathes & Williams, of Plainview, for defendant in error.

HUFF, C. J. The plaintiffs in error, Kate S. Payne and J. F. Sageser, brought separate suits against defendant in error, W. L. Ellwood; the two cases were thereafter consolidated in the court below by agreement, and the case as repleaded was in the nature of trespass to try title; the action resolving itself into one of boundary, Kate S. Payne showing title to section 9, block D—10, and J. S. Sageser to section 10, block D—10, E. L. & R. R. Ry. Co. The defendant owns sections 58 and 59, block 1, R. M. Thompson surveys, which lie west of the two sections owned by plaintiff. The controversy is over a strip of land lying west of the defendant's fence, and referred to in the record as the Spade fence. The defendant pleaded not guilty, and set up in defense the three and five year statute of limitation. The following agreement was entered into, by which it was stipulated and agreed that it should be part of the evidence in the case:

"First. That plaintiffs have paper title to their respective surveys Nos. 10 and 9, in block D—10, Hale county, Tex., wherever the same are properly located, subject to defendant's pleas of limitation, which are to be tried, and that defendant has paper title to his surveys Nos. 58 and 59, block 1, partly in Hale and partly in Lamb counties, Tex., wherever properly located, subject to plaintiffs' claim that if located on plaintiffs' surveys the location is void.

"Second. That defendant Ellwood and those under whom he claims and whose estate he has, have had and held peaceable and adverse possession of the strips of land sued for for more than three years next preceding the filing of this suit, claiming same as parts of surveys Nos. 58 and 59 above mentioned by defendant.

"Third. That defendant Ellwood and those whose estate he has, and under whom he claims title, have had and held peaceable and adverse possession in the strips of land sued for, using and enjoying the same, claiming same as parts of said surveys Nos. 58 and 59 above mentioned, and under the deeds to be introduced for a period of more than five years."

The trial court instructed the jury: "The plaintiffs therefore set up and claim title to all of sections 9 and 10, block D—10, Hale county, Tex., and the defendant sets up and cliams title to all of sections 58 and 59, block 1, Lamb and Hale counties, Tex. The plaintiffs contend that, when their two sections, to wit, 9 and 10, are properly surveyed and located upon the ground, their west boundary line will extend west of what has been testified as the Ellwood or Spade fence; that is, the northwest corner of section 10 will

extend 381 varas west, and the common corner of 9 and 10 will extend west 344.5 varas, and the southwest corner of section 9 will extend 307.6 varas west of said fence line. Defendant contends that, when said sections 9 and 10 are properly surveyed and located upon the ground, their west line will not extend west of said fence line at all, and will practically lack a few varas of reaching said line or fence, and he further contends that his sections 58 and 59 extend to and reach said fence line, or about said fence line from the west. The question therefore before the jury for their decision is the proper location upon the ground of the tracts of land owned by the plaintiffs and those owned by the defendant, and, after a proper location thereof, is either in conflict in the boundary lines of them, and, if a conflict, the amount and extent of same."

After giving in charge the rules by which the jury were to be governed in ascertaining the location of the land, the court instructed: "So far as the evidence in this cause shows, there are no fixed objects, either natural or artificial, upon the ground in any of the sections in block D—10, by which sections 9 and 10 in said block can be located, and 9 and 10 and the other sections in said block, taking their connections from the four leagues of Sabine county school land, your location of said sections 9 and 10 will therefore depend upon where you locate Sabine county school land. The southeast corner of league No. 1, Sabine county school land, according to its field notes, is described as being a mound of earth and a small rock about 20 miles north and 9 miles west of the southwest corner of No. 1, block A, Lubbock county; said mound being 19 miles and 1,846 varas north, and 9 miles and 19 varas west, of the junction of the Yellow House creek and the north fork of the double mountain fork of Brazos river. The southwest corner of section 1, block A—1, Lubbock county, is a well fixed and established corner, and its location is agreed to by the parties to this suit. The field notes in the leagues, 1, 3, and 4, of said county school land call for crossing the creek known as the north fork of the double mountain fork, and it is contended by plaintiffs that said four leagues of land have been properly located, course and distance from section 1, block A, and by their calls for this creek as surveyed by L. A. White and W. E. Potterfield. This contention is denied by the defendant. Therefore it will be necessary for the jury, in order to locate sections 9 and 10, block D—10, to first determine the true location of the four leagues of Sabine county school land. According to the field notes E. M. Powell was the surveyor who surveyed the Sabine county school land. Bearing in mind the above instruction, you are therefore instructed that if you find and believe from the evidence that the said four leagues of Sabine county school land should be located upon the ground according to the surveys as made by White and Potterfield, and as contended for by plaintiffs, you will find for the plaintiffs, and the form of your verdict will be, "We, the jury, find the northwest corner of survey No. 10, block D—10, to be 381 varas west of the Spade fence, and the southwest corner of section 10, said block, and the northwest corner of section 9, said block, these corners being a common corner, to be 344.5 varas west of said fence and the southwest corner of section 9, said block, to be 307.6 varas west of said fence.' But if you do not believe from the evidence that the land in dispute should be located as contended for by the plaintiffs, according to White and Potterfield surveys, then you will find for the defendant, and the form of your verdict will be, 'We, the jury, find for the defendant.' "

The jury returned a verdict for the plaintiffs in the form prescribed by the court. The court rendered judgment thereon after reciting the impaneling of the jury and submission of the case to the jury, and has the following recital: "And the court, after all the evidence was heard, being of the opinion that the undisputed evidence showed that the east line of defendant's sections of land, Nos. 58 and 59, block 1, extended to the Spade fence, and that the only question of fact to be determined by the jury was the true location of the northwest corner of survey No. 10, all in block D—10, and the southwest corner of survey No. 9, all in block 10, submitted such question only to the jury, and, the jury having heard the pleadings, evidence, the argument, and charge of the court," etc., returned into court the verdict as above set out by us, and the judgment then continues: "It is therefore the judgment and decree of this court" that the northwest corner of survey No. 10 is located 381 varas west of the Spade fence and the southwest corner of No. 10, and the northwest corner of No. 9 is located 344.5 varas west of the Spade fence, and the southwest corner of survey 9 is located 307 varas west of said Spade fence, "according to the R. P. Smythe sketch of said surveys, and that plaintiff's surveys 9 and 10, block D—10, embraced the land in controversy, and as described in their first amended original petition, and are prior surveys to defendant's surveys 58 and 59; but, it appearing to the court from the uncontroverted testimony that the defendant's surveys Nos. 58 and 59, block 1, extend east to the said Spade fence, and it being agreed by all parties that the defendant and those under whom he holds title have held peaceable and adverse possession of the land in controversy, using and enjoying the same, for more than five years preceding the filing of this suit, and claims same as part of said surveys Nos. 58 and 59." The judgment sets out in other recitals the agreement necessary to prescribe under the five-year statute, and the judgment decreed

that plaintiffs, Kate S. Payne and J. S. Sageser, take nothing by their suit, and that the defendant recover the costs, and that he have his execution.

The recitation in the charge given by the court is sufficient designation of the calls in the various surveys and the connections therewith in locating sections 9 and 10, block D—10, owned by plaintiffs. The calls of the Sabine county school land are for a due northeast, south and west, course. The testimony of the witnesses is to the effect that the west lines of these four leagues as fixed by White and Potterfield do not run due north. The west line of block D—10 and the west line of surveys 9 and 10 is an extension of the west line from the northwest corner of No. 3, Sabine county school land. It is testified by some of the witnesses that the variation of the west line, and upon which these surveys are run, gives the course west of the line running north, and thereby produces a conflict with the block of surveys of which sections 58 and 59 are a part. The witnesses for plaintiffs claim to have fixed the corners and lines of the Sabine county school leagues by natural and artificial monuments. The maps in the land office and sketch used by the surveyors in locating the three Thompson blocks, of which defendant's land is a part, then showed that there was a vacancy between these Thompson blocks and block D—10 and the Sabine county school leagues. Block D—10 was surveyed by E. M. Powell, deputy surveyor of Jack land district, January 23, 1879; block T, T. A. Thompson, was surveyed by Sam L. Chalk, deputy surveyor of Baylor district, October 13, to 16, inclusive, 1882. Surveys 58 and 59, owned by the defendant, are a part of block 1, R. M. Thompson survey. The evidence also shows that block 1, R. M. Thompson, was surveyed by Chalk October 23, 1882, calling for block T. The maps and testimony also show block A, south of block 1 and block B, both for R. M. Thompson, north of block T, were surveyed, by whom is not shown, but is treated by both parties as having been surveyed about the same time as the other two blocks. These several blocks call for the capitol leagues lying west. The leagues for the capitol lands were marked by corners which are found and identified so that the west line of the Thompson blocks are fixed on the ground. There were also found corners in the Thompson block which were identified by witnesses.

It also appears that in 1886 the witness A. S. Howren surveyed out the Thompson blocks and located the east line thereof for the purpose of erecting the Spade fence. He testified as to the methods by which he did this, and his testimony, together with that of Twichell, and Williams, show that they found the capitol league corners and identified corners in the Thompson blocks. The testimony indicates the fence on the east of the blocks was erected where Howren claimed the east line, and was placed on that line at that time. The testimony is reasonably certain that 58 and 59 had no marked corner or lines for their east boundary, and their position was to be ascertained by course and distance from either the capitol leagues or from identified corners elsewhere in the Thompson blocks. Some of the evidence introduced by the defendant shows that in running course and distance from the identified corners in the capitol leagues or in the Thompson block the Spade fence is not reached by estimated from 20 to 49 varas, while some place the east line of said sections east of the Spade fence some distance. The Thompson blocks are eight miles wide by the calls in the field notes. On the north end of said blocks Howren testified he gave them their complement eight miles; at the south end of the blocks he found them 200 varas in excess of their call in width. All the blocks together are 34 miles long. The defendant accounts for the east line of sections 58 and 59 not reaching the fence by making a mathematical demonstration, or "by a simple proposition of 34 is to 200 as 8 is to x; that the excess at the surveys in question is 48 varas, or practically what Mr. Howren said the fence was east course and distance from the capitol league on the west." In order to demonstrate the proposition, a straight line must be drawn from the northeast corner of the Thompson blocks to the southeast corner of the same, and there should be no offsets, and the line should not vary. The evidence is not clear on that point; that is, that the line is a straight one and did not vary. The plaintiffs in error insist that the maps and field notes in existence and in use at the time the surveys were made and filed in the land office show no conflict of the surveys in question and evidence the fact that it was the intention and purpose to locate the Thompson blocks out of conflict with block D—10.

It was shown by the testimony that the defendant, and those under whom he claimed, had paid all the taxes, on surveys 58 and 59, block 1, for each year prior to 1900 to 1911, inclusive, and that he had receipts therefor. Plaintiffs also introduced patents from the state of Texas to Louis C. Nelson, assignee of R. M. Thompson, to sections 58 and 59, in block 1, dated June 13, 1883, and field notes given in the patent were the same as the field notes made by the surveyor at the time of surveying the land. He also introduced in evidence the deed of Dudley H. and John W. Snyder to Isaac Ellwood, dated June 15, 1891, conveying surveys 58 and 59, block 1, together with other lands. The patent and deed were recorded in the deed records of Lamb county, June 20, 1891; and they also introduced in evidence a deed from Louis C. Nelson to D. H. and John W. Snyder, dated the 18th day of December, 1885, which deed was fully recorded on the 14th day of April, 1886. It was agreed that W. L.

Ellwood, the defendant, is sole legatee and devisee under the will of Isaac Ellwood, deceased.

This statement is perhaps sufficient to give a general idea of the issues involved and discussed by us.

Plaintiffs in error complain of the judgment of the court because it is contrary to the law and evidence and unsupported by either, and not supported by the findings of the jury, that the jury found plaintiff's land covered the land in controversy and as claimed by them, and that the defendant had no title to the land in dispute, and therefore could not prescribe by the statute of limitation. In treating the case we cannot set out the several assignments because of their length, but will discuss the issues presented by them without referring to them specifically. Under the verdict of the jury the plaintiffs were entitled to judgment for the land in controversy unless sections 58 and 59 were in conflict with it or covered by it. This could only be ascertained by finding their true location by course and distance from identified corners or points in the block of which they were a part or from adjacent surveys from which their location could be ascertained.

[1] It is urged by plaintiffs in error that the owner of a junior survey cannot acquire title to land covered by a senior survey under the five-year statute of limitation when he pays taxes only on his own survey and there is nothing in the field notes nor on the ground showing conflict in the surveys. In support of this proposition they cite Hull v. Woods, 14 Tex. Civ. App. 590, 38 S. W. 256; Hoen v. House, 31 S. W. 83; Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026; Garrison v. Arnett, 126 S. W. 612; Spence v. Johnson, 3 Tex. Civ. App. 627, 22 S. W. 1042; Williamson v. Brown, 49 Tex. Civ. App. 402, 109 S. W. 412.

In the case of Hull v. Woods, supra, the junior survey, Wade Hudson, called for the senior survey, Follett. The court there said in that case: "Hence we must and do find that there is no conflict between the two surveys," and that the taxes paid were on the 240 acres of Wade Hudson survey, and upon no part of Follett survey, and therefore did not comply with the statute.

In the case of Hoen v. House, supra, the court said: "The case is not analogous to that of Harrison v. McMurray, 71 Tex. 122 [8 S. W. 612], where there was a conflict in the original location of the two grants. Here there was no such conflict, but only an excess in the Dunn."

In Dutton v. Thompson, supra, the land in controversy was situated on section 182. The defendant there rendered and paid taxes on 9¾ acres out of section 180. It is there held that, though the defendant may have intended to pay taxes on the land claimed by him, he had not done so, and could not prescribe under the statute of limitation. The

location and issuance of a patent by the state of Texas on sections 58 and 59, as between the state and the patentee, was not void, though it may be relatively void as respects the rights of third persons. The junior grant is a sufficient one under which the owner thereof may prescribe under the three and five year statute of limitation. Grigsby v. May, 84 Tex. 240, 19 S. W. 343; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Williams v. Brown, 49 Tex. Civ. App. 402, 109 S. W. 412; Gallan v. Town of Goliad, 32 Tex. 776; League v. Rogan, 59 Tex. 432.

In Grigsby v. May, supra, Judge Stayton for the court said: "In the case of the grant of land covered by a prior valid grant, the state has no right to the land, and hence the patent of itself conveys no right; but it would not be claimed that an adverse possession for three years under the latter grant would not confer complete right to the land, would not confer title, and in the sense of superior right to the land. The cases of League v. Rogan, 59 Tex. 427, and Burleson v. Burleson, 28 Tex. 417, illustrate the fact that it is not necessary for the purchaser to whom a patent issues to be entitled to receive the grant in order for the patent to constitute 'title' within the meaning of the statute applicable in this case. In the case first above named the patentee had no right to the land when the patent issued, yet it will not be contended that the statute of limitations of three years did not bar the right of the person having the superior right because the owner of the certificate by virtue of which the land was patented."

The case of Gallan v. Town of Goliad, supra, was one in which it was held that a grant from a Mexican government might be presumed and protected by the Constitution of the republic and the state, yet if the land was subsequently patented to another party the junior grantee could prescribe under the three-year statute. The court there said: "This defense is available even when the state itself had made a grant of land to different parties. Conflicting grants are necessarily implied in their invocation of the plea of the statute, and both titles cannot be paramount. Each is title against the government, and valid as between the parties to it, but relatively they are only ranked by age. The government by its general policy in the enactments of the statute of limitations has only made their relative validity depend upon the conduct of the grantees themselves in taking and holding possession. If the junior grantee gets the possession and holds adversely for the time prescribed for limitation, it becomes secured against invasion or claim of the elder grantee. It is true, as a matter of abstract justice, when the state has once granted a part of her public domain to one of her citizens she has no right to grant it to another. But such double grants are fre-

quently made by the state, not in disregard of the obligations of the public faith, but for want of correct and accurate information in regard to the locality of the land sought to be appropriated by each grantee, and in such case the statute of limitations or statutes of repose must regulate the relative rights of the parties." This case is cited with approval in League v. Rogan, supra, upon a similar question.

We, therefore, think if the jury had found that the field notes of sections 58 and 59 included the land in question, or so much thereof as was included within their boundaries, then the defendant could prescribe under the statute of limitation.

[2] We also think that a description of the land by section and certificate numbers, name of the grantee, and the like is sufficient in the deed where the patent and field notes otherwise designate the land. Recording such deed would be sufficient notice of an adverse holding to the extent of the boundaries in the field notes set out and described in the patent and field notes in the surveyor's office.

[3, 4] The court having failed to submit this issue to the jury, and having determined the question as upon uncontroverted facts, it is urged was error. Under the decisions of the Supreme Court of this state, as we understand them, we believe plaintiffs' proposition must be sustained. This will therefore reverse the judgment of the trial court; and, as we understand the facts in evidence, there was an issue raised by them whether defendant's field notes covered all the land in dispute. We cannot, with that degree of certainty required, ascertain the location of the defendant's true east boundary line so that we would feel warranted in rendering such judgment as should have been rendered in the court below. Possibly we may have the power to render such judgment as should have been rendered in the trial court if we could say or find to our satisfaction that there was no issue presented by the evidence which should have been submitted to the jury (Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Henne v. Moultrie, 97 Tex. 216, 77 S. W. 607); but, being unable from our examination of the record at this time to say there was no testimony upon which the issue should be submitted to the jury, we do not feel authorized in rendering a judgment. Not being able to render such judgment, we must reverse the case, as we understand the law. Assuming in this case that the evidence established that the calls in the field notes of sections 58 and 59 included the land involved in the suit, yet, under the decisions of our Supreme Court, we do not believe the trial court had the right to find that fact and render judgment on such finding. The verdict in this case was for the plaintiff. The court, however, disregarded that finding, and upon its own findings rendered judgment for defendant. Ablowich v. Bank, 95 Tex.

163 S.W.—7

429, 67 S. W. 79, 881; Silliman v. Gano, 90 Tex. 645, 39 S. W. 559, 40 S. W. 391; Moore v. Moore, 67 Tex. 293, 3 S. W. 284; Ry. Co. v. Watson, 13 Tex. Civ. App. 555, 36 S. W. 290. In Davis v. Pullman Co., 34 Tex. Civ. App. 621, 79 S. W. 635, it is said: "In jurisdictions where the practice obtains of entering judgments non obstante veredicto, the general rule is that a motion by the plaintiff to enter such a judgment will only be entertained when the verdict is for the defendant upon the facts that present no defense. Brown v. Rentfro, 57 Tex. 332; Templeman v. Gibbs, 25 S. W. 736. * * * In Texas it is made the duty of the court to enter its judgments in conformity with the verdict, whether it be correct or not." "When a jury has been demanded by either party, he is entitled to have every material issue made by the pleading and the evidence submitted to the jury, and the trial court cannot enter a judgment upon a verdict which fails to pass upon any material issue submitted to the jury, unless it be in case of a special verdict, which is provided for by statute." Ablowich v. Bank, supra. If the facts were undisputed, as stated by the court in the judgment, that the field notes of defendant's land included the land in question, and that defendant had been in possession of the land for five years under deed duly recorded, paying taxes thereon, then the court would have had power to instruct a verdict for the defendant. There was no agreement by the parties or admission in the pleadings that the calls in the field notes of sections 58 and 59 included the land in dispute. What the field notes included had to be determined from all the facts in evidence.

[5] The defendant in error insists that this is a case in which we should apply rule 62a (149 S. W. x). As will be observed from reading the statutes and the Constitution of the state, the right to have a jury pass upon the issues or rights of parties is guaranteed to every citizen. The courts have strictly construed these statutes, and, where the trial court has deprived a party litigant of the right of trial by jury upon any issue which he has sought to have submitted and passed on by a jury, have invariably reversed the case, even though no injury was shown. The Supreme Court, in the recent case of Railway v. Beasley, 155 S. W. 183, said, "The Supreme Court cannot, by rule, set aside a statute," and further held that "rules must be held to harmonize with the statute and opinions of the Supreme Court." Whatever may be our power to render a judgment in this court such as should have been rendered in the court below, we must nevertheless, as we understand the decisions where a party has been deprived of a trial by a jury, reverse the case, and, as suggested above, we are not able from our reading of the evidence to render such judgment as should have been rendered in the court below.

We will take occasion to say at this time

that we have had much difficulty in understanding the testimony of several of the witnesses, for the reason that they appear to have been testifying from maps before them. Such expressions as "here," "there," "along here," and "this point," and like expressions are not understood by us as to the points referred to, and we were unable, from the context in which the words were used, to locate just the points the witnesses were then testifying about. It was doubtless clear to the trial court, jury, and counsel, but it is not so to us.

For the reasons above stated, the case will be reversed.