MARIA J. GALAN AND ANOTHER *v.* THE TOWN OF GOLIAD AND PRYOR LEA.

1—Plaintiffs, suing for land, proved continuous and uninterrupted possession for more than twenty years from and after the year 1801. *Held,* that a grant from the government might be presumed.

2—Defendants, pleading and relying on the three years' statute of limitations, introduced in support of their plea a patent from the Republic of Texas, issued in 1844. *Held,* that the patent constituted such title or color of title as would support the defense of three years' limitation—in conjunction, of course, with such possession as the statute requires, for more than three years before the bringing of the suit.

3—It seems that in a contest between two different grantees, both claiming directly under patents from the State, the junior patent will be title or color of title sufficient to support the three years' limitation against the elder patent.

4—A vendor who retains title as security for unpaid purchase money should be allowed to become a co-defendant with his vendee in a suit against the latter for the land.

ERROR from Goliad. Tried below before Hon. J. J. Holt.

This suit was instituted 30th June, 1856, by Maria Josefa Galan against Pryor Lea, to try title for a piece of land within the town of Goliad, and for damages.

May 8th, 1857, defendant, Lea, answered, not guilty of the trespass.

November 4th, 1857, the common council of the town of Goliad interposed and became a defendant, as landlord or owner of the premises, and answered as follows: 1. Not guilty. 2. Possession under title and color of title, and law of limitation of three years. 3. Reconvention for cloud of title—charging that plaintiff had not been possessed of the premises for more than twenty years before suit, and that the town had been in possession during this time, and that the town obtained its grants without any notice, either actual or constructive, of the claim of plaintiff.

May 2d, 1866, plaintiff amended petition, and stated details of her title by grant and long possession, and also stated that Francisco Galan was a joint owner.

February 27th, 1867, plaintiff (Josefa Galen still being sole plaintiff) excepted to the previous pleading of the common council by general exception, and also denied the allegations·

The same date, same plaintiff amended petition, by stating that the occupation under which she claimed ceased on account of the war between Mexico and Texas, which commenced about 1834.

The same date, Francisco Galan became a co-plaintiff.

February 28th, 1867, defendants amended their answers, showing the title and color of title of the town more particularly than in the former pleading, and showing the manner of the town's possession by detailed facts, and explicitly stating the relative positions of the defendants, and claiming benefit of former and present pleading connected together.

On the trial in February, 1867, the exception to the answer of the common council was overruled, and the case was submitted to a jury.

As evidence, plaintiffs offered papers purporting to be grants given by a captain and a lieutenant, commanding the garrison of La Bahia del Espiritu Santo, and dated 1779. On objections, the papers were not admitted as titles, and plaintiffs excepted

to the rulings that excluded the papers as titles. But the papers, on presentation for such purpose, were read to define the bounds of possession which plaintiffs claimed.

Plaintiffs then proved continuous possession, by their predecessors and themselves, from 1801 to 1834, and that their possession was discontinued by the war between Mexico and Texas, and had not been subsequently resumed; and that plaintiffs were part of the heirs, (only those living in Texas), who were entitled to the benefit of the claim of right on which the suit was instituted.

Defendants then read the documents pleaded by them as title and color of title, the first being decree 73, dated February 4th, 1829, creating the town of Goliad. The others were legislative recognitions and grants, dated in 1837, 1840 and 1852, and a patent, dated 25th of October, 1844, and authorized by resolution dated February 5th, 1840.

Defendants then proved as follows : The corporate authority of the town of Goliad was organized and in operation on and from the 7th day of October, 1846, and so continued to the time of the trial. From 1846 to the trial, the corporation had held actual possession of parts of the four leagues described in the patent, continuously using the public grounds, the public square, the cemetery and the streets, as customary for towns to use such property. In 1846 the whole four leagues granted to the corporate authority of the town of Goliad were, by its order, surveyed and sub-divided into lots and streets, parts of the dividing lines being run through the premises in contro_versy, and all the sub-divisions being marked on a town map. In December of the same year, according to such survey, said corporate authority, on public notice, made auction sales of many of said lots. Similar sales were made in subsequent years ; and such sales were made for prompt payment in part, and on credit for remainder of prices—the vendor retaining title until full payment. The records of the corporation proved sales of farm lots numbered 34, 35, 36 and 37, embracing parts of the land in controversy, to M. Fulcrod, in 1847 ; and of

farm lots numbered 49 and 50, embracing the remainder of the land in controversy, to defendant, Pryor Lea, the 7th of November, 1854. Written agreements showed that said Lea had acquired the rights of said Fulcrod in the lots sold to him. For the lots so purchased by said Fulcrod and Lea, the town authority held the title, having been paid only in part. The land in controversy was situated within the limits of said four leagues of land.

The court instructed the jury as follows :

" If the jury should find, from the evidence, that the plaintiffs, or those under whom they claim, held absolute, uninterrupted possession of the land claimed for twenty years, the law presumes that they so held under a grant from the sovereignty of the soil, and they should find for the plaintiffs, unless they should further find that the plaintiffs' title, then acquired, had since been lost, as hereinafter charged.

" Should the jury find, from the evidence, that the plaintiffs abandoned the possession of the land claimed, and subsequent thereto the Legislature of the State of Texas granted to the corporation of the town of Goliad a tract of land embracing the land claimed ; and if you further find that the land thus granted was surveyed, and that a patent was issued therefor by the State to said corporation, in accordance with the terms of such legislative grant ; and should you further find that said corporation was organized under the town charter more than three years before the institution of this suit (June 30, 1856), and that from and after said corporation was thus organized, it claimed and exercised acts of ownership over the land thus granted, of which the land claimed constitutes a part ; and that said corporation so claimed possession and control over said tract, under and by virtue of said patent, up to the time of the institution of this suit ; and should you further find that, during said time (for three years before the institution of this suit), the plaintiffs were not, either by themselves or others, in possession of the land claimed, their rights to the same was,

at the institution of this suit, barred by the statute of limitation, and you should find for the defendants."

The jury found for the defendants, and a corresponding judgment was rendered.

Plaintiffs moved for a new trial, but the motion was overruled, and they excepted to the ruling, and finally they gave notice of appeal.

The appeal was not perfected, and the case is brought to this court by petition for writ of error.

Assignment of errors :

1. The court erred in overruling the demurrer or exception to the intervention of the town of Goliad.

2. The court erred in instruction given to the jury, excepting the first part, in relation to the right or title of the plaintiffs to the land.

3. The verdict of the jury was contrary to the law and the evidence.

4. The court erred in overruling the motion for a new trial.

5. The judgment was not properly and regularly entered.


*F. Fauntleroy* and *J. S. Givens*, for plaintiffs.—We contend that the patent, if it intended to convey the land in controversy, was so far void. A grant from the government to the plaintiffs being presumed, the government had no right to issue a patent for the same, and the patent is absolutely null and void. (Shep. Touch., 245; Patterson v. Jenks, 2 Peters, 216; Thompson v. Gaillard, 3 Rich., 418; Pollard v. Grist, 8 Ala., 919; 7 vol. An. U. S. Dig., 289, 290; Smede's Dig., 245; Hit-luk-ho-mi v. Watts, 7 S. and M., 316.)

The case of Sherwood v. Fleming, decided by this court : " an appropriation of land by the government is nothing more nor less than setting it apart for some particular use; and whenever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public domain, *and no subsequent law, or proclamation, or sale, would be construed*

*to embrace it or to operate upon it;* although no reservation be made of it." (13 Peters, 498, cited in the case of The State v. Delesdernier, 7 Tex., 108.) In the last named case the court say that "the patent being for land not subject to appropriation by individuals by location, is absolutely null and void, (Id. 108, 109; 2 How., 318,) and those claiming under it acquired no right." (7 Peters, 222; 3 Coke, 94; 1 Tex., 728; Hinkley *et al.* v. Stewart, 3 How. U. S. R., 760.)

"The valid rights of older claimants are not concluded *or impaired* by the issue of the second title, unless those rights had, on proper issues made between the parties, been adjudicated previous to 'the issue of the second title. (Smith v. Power, 2 Tex., 72; Com. General Land Office v. Smith, 5 Tex., 471.) In the case of Polk's Lessee v. Wendall, 9 Cranch, 98, the court say: "But there are cases in which a grant is absolutely void, as where the State has no title to the thing granted." Patents issued for Indian lands are void. (9 Wheaton, 573; 2 Peters, 234.) When the defendant has been in possession thirteen years under a State grant obtained with a full knowledge of a prior grant, the second grant will be vacated. The act of limitation has no application to such case. (3 Hawks, 322.) A grant of lands by Tennessee, to which the Indian titles had not been extinguished at the time of the grant, is void and conveys no title. (2 Hump., 19.) The State could convey no greater title than she had herself. (4 Kent Com., 490.) Where there has been possession under a void deed, it may be read as to the extent of the claim, but *not* to *prove title.* (1 Kinine. Comp., 308; 3 Greon M. R., 376; 2 Greon R., 276; 2 Nott and McCord S. C., 55; Sherwood v. Fleming, decided at Austin, 25 Sup.) If the patent was absolutely void, as to the land in dispute, then it could not afford a basis for limitation. The opposite doctrine would be a plain contradiction. On this subject we think there is some confusion in the decisions—a manifest want of clearness.

It is true, that if the statute could be supported only by a perfect title, there would be no necessity for the statute; but

it does not follow that a *void* claim is sufficient basis for limitation. The proper distinction, it seems to us, is not made between a defective and a void claim; the statute is intended to cure or quiet *defective* titles, but that which is void is surely *nothing*—can be the foundation of no right; and to say a void claim is color of title, is a contradiction of terms, and is equivalent to saying nothing is something. It is entirely inconsistent with the statute in relation to the limitation of three years. As to the definition of color of title, see statute and Smith v. Power, 23 Tex., 33, 34. The position here assumed is more manifest, if possible, in regard to the last mentioned statute, as more strictness is required under this than is demanded under the statute as to longer periods. In the case of Charle v. Safford, 13 Tex., 112, the court say: " The object of the statute in its *longer terms* is not to settle questions in relation to good or bad faith, the right or wrong of possession." Then, as to the short term, the questions of good or bad faith, and the right or wrong of possession must be settled, and this would be fatal to a *void* claim. If the patent was not void as to the land in dispute, and was intended to embrace the same, then it is contended that the grant from the State inured to the benefit of the plaintiffs. (Urket v. Coryel, 5 Watts & Sergeant's R., 60 ; 3 Kinnie Com., 450 ; 15 Tex., 241.)

*Pryor Lea*, for defendants, after discussing a question of pleading, proceeded as follows :

1. The second inquiry relates to the writings offered by plaintiffs as evidence of their title. These papers purported to bear date in 1779, and to have been executed by a lieutenant and a captain, respectively commanding the garrison at La Bahia del Espiritu Santo, and to have Spanish stamps. Objection was made, that the papers were not authenticated. Plaintiffs then offered them as ancient deeds in connection with proof of proper possession of them. Further objection was made, that the officers, appearing to have executed the documents, had not authority to grant lands in full title, as these

papers purported to do.   These documents, as titles, were ruled out, and plaintiffs excepted to this ruling.   But the papers were then offered to show the bounds of the claim of plaintiffs; and for this purpose the documents were admitted.

Were these papers legal evidence of title?  There was not any attempt to show that such military officials, of low grades, had authority to grant lands by complete titles; and the general modes of giving Spanish titles seems to preclude such authority. While antiquity may aid in proving the genuineness of papers, they must be consistent with some legal authority for making such documents.   But the other part of the proposed proof was defective for want of specification as to the proper possession. These documents are not sustained by any ordinary proof of execution, nor by any apparent authority to make them, nor by any statement of particulars as to the custody of them.

2. The third inquiry relates to alleged title of plaintiffs by long possession, and consequent presumption of a grant.

On this branch of the case, plaintiffs had the benefit of complete title, by the opinions of the court, on the trial; and no loss was sustained by plaintiffs from the rejection of their papers as titles.   Under either form of title, the plaintiffs would have the same chance of recovery.

But, had plaintiffs an available title by possession and presumption, or, in other phrase, by prescription?

The possession commenced in 1801 and ceased in 1834.

The court instructed the jury that such possession for twenty years raised the presumption of a grant under which the possession had been held, and that thereon plaintiffs should recover, unless defendants had made out an available defense.   But defendants are still at liberty, in the Supreme Court, to maintain the judgment in their favor, without their defenses in avoidance, by holding plaintiffs to a showing of title in themselves.   And so defendants controvert the dernier resort of plaintiffs, that they had title by force of possession—although the District Court so held.

The weight of authorities maintain that there is a difference

between a government and private persons as to the influence of possession in its tendency to prove a conveyance of title, and that possession for thirty-three years, the time claimed for plaintiffs, of itself does not, with presumption, establish a grant; and that time alone is not to be regarded as conclusive proof of a grant by a government; but that time and other circumstances are to be considered, like proofs in general, for ascertaining the truth on the inquiry whether a grant were issued; and that the question pertains to a jury, to be determined according to weight of evidence. These views have been fully maintained by the Supreme Court of Texas, especially in the later decisions. Special reference is made to two modern cases: Taylor v. Watkins, 26 Texas, 688, and Yancy v. Norris, 27 Texas, 40. In each case Justice Bell gave the decision, and the authorities are reviewed so as to render unnecessary any other references as to presuming grants.

Applying ordinary rules of evidence to the present case, the actual existence of a legal grant is conclusively negatived by several circumstances. First—governments are notoriously jealous of their rights, and these are guarded by regular modes of making titles to divest public interests, especially in lands. Second—the original possessor, under whom plaintiffs claim, affected to have titles in writing, and plaintiffs have endeavored to avail of the same documents in deraigning title, and the possession avowedly rested on these papers, thus precluding any claim of other title than these documents, before shown to be insufficient. Third—decree 73, creating the town of Goliad, was dated 4th of February, 1829, about twenty-eight years from the commencement of the possession under the inadequate documents, and when the possessor had no material right; and subsequently the premises were part of the *ejidos* of the town, incapable of full private ownership, which could not be granted. (Partidas 5, tit. 5, l. 15.) Legislation, by several acts, commencing 4th of February, 1829, and ending 9th of February, 1852, during more than twenty-three years, recognized and confirmed the town title, and this title was

continuously used by the town authority from its last organization—the 7th of October, 1846—to the commencement of this suit, the 30th of June, 1856, nearly ten years—such recognition and use extending over more than twenty-seven years. Fifth—of the term of more than twenty-seven years of recognition and use of the town title as aforesaid, about five years elapsed before the cessation of the possession of plaintiffs in 1834, leaving twenty-two years, at least, during which term no person had possession for the benefit of plaintiffs, their absence manifesting an abandonment of their former claim and a recognition of the town right. These concurring circumstances demonstrate the negative of a presumption that the possession of plaintiffs was under an actual grant.

Although defendants are fully persuaded that they might rest on the failure of title in plaintiffs, yet the defenses in avoidance may not be omitted without an appearance of excessive confidence.

3. The fourth subject for consideration is notice. This presupposes a title in plaintiffs, that might prevail if not overcome by some avoidance. But any supposable title in plaintiffs could not prevail against defendants, who held under title that was procured without notice of title in plaintiffs. Suppose a title not susceptible of loss by mere non-user, yet plaintiffs had not placed on record a written title, and for twenty-two years, at least, they had abandoned the possession, on which must rest the presumption of a grant. To preserve a title, in competition with a younger grant, involves the necessity of manifesting the former according to public policy; and this necessarily requires the continuance of possession when it is the only manifestation of right. If temporary personal absence might be tolerated without detriment, yet such absence should not amount to apparent abandonment, and a conclusive analogy may be found in the limitation of suits. A junior grant should not be affected by knowledge of a mere possession when dating in remote priority. (Dikes v. Miller, 24 Tex., 424.)

4. The fifth subject for consideration is limitation. If plain-

tiffs had established that they had title, and that defendants had notice, still the latter have pleaded and proved actual, adverse, peaceable and uninterrupted possession for more than three years before suit, under title and color of title derived from the sovereignty of the soil.

To counteract this defense, the plaintiffs allege that the granting, which has been made to the town, is void, on account of the pre-existing title of plaintiffs; and they appear to be strenuous in contending that a void grant, in the broadest sense of the term *void*, will not sustain a defense of limitation. The proof does not sustain the allegation, that the granting to the town is void in any sense of the term, and the assigned reason, at worst, would only give the sense of *voidable*. But the doctrine that a void grant will not sustain a defense of limitation, is applicable to grants that are absolutely and intrinsically void, and not those that are voidable by force of other rights. And this distinction is too well established to admit of renewed discussion. (Wright v. Matteson, 18 How. R., 50; Humberts v. Trinity Church, 24 Wend. R., 586; Charle v. Saffold, 13 Tex., 112; Smith v. Power, 23 Tex., 33; Pearson v. Burdett, 26 Tex., 157; Lambert v. Weir, 27 Tex., 359.)

Without here noticing other requisitions of the town title, particular attention is directed to the legislative resolution of 5th February, 1840, authorizing a patent to the town for its known four leagues of land, and to the corresponding patent of 15th of October, 1844.

But if the town title were sufficient for limitation, this defense is further resisted on the ground that the possession was inadequate. Objection is made to the kind of possession held by the town. If this kind was not sufficient, there might be difficulty in determining what kind of possession by the town would be available. It claimed and held the whole area of the four leagues granted to it, (except some small lots in possession of old Mexican inhabitants, left undisturbed within the limited bounds of the ancient town settlement); designating certain portions for specified uses and other portions for prospective

sales; surveying all for such purposes, necessarily distinguishing the parcels by marks, which were permanent means of diversified and general possession—in particular subdiving into lots the premises in question, and making provisional sales thereof, with retention of title either until payments should be made or indefinitely on failure of payments. But further objection is made, that the title and the possession were separated, so that neither of the defendants could avail of the limitation. The answer is, that the interests were not severed, there being privity between the parties as to both title and possession, each party having an interest in each particular. In such case, either party or both may avail of limitation, on the principle of unity, which likewise allows a connection of possession when there has been a severance of title. The doctrine of the objection, if sustained, would militate against the general policy of limitation, and would materially interfere with conditional sales of real property, a very important class of transactions. (Williams v. Simpson, 16 Tex., 444; Cunningham v. Frantzen, 26 Tex., 34.)

LINDSAY, J.—The charge of the court in this case correctly expounded the law applicable to the facts proved before the jury. Without written muniments of title, from the proof made by the plaintiffs of a continuous and uninterrupted possession of the land in controversy for a period of more than twenty years, a grant might be presumed. That proof was distinctly made upon the trial, and the plaintiffs, under the charge of the court, got the full benefit of the presumption. But it does not necessarily follow, from the establishment of such title in the plaintiffs, that the defendants were precluded from the introduction of a title derived subsequent in time, from the State, to protect their possession under the three years' statute of limitations. Though a grant from the Mexican Government might be presumed, and such grant would be protected by the tenth section of the general provisions of the Constitution of the Republic, and the twentieth section of the

Constitution of the State; still, if the State afterwards granted the same land to others of its citizens, and possession was acquired by them and held adversely under such grant for a period of more than three years before institution of this suit, the statute of limitations will protect their possession. This defense is available, even when the State itself has made a grant of land to different parties. Conflicting grants are necessarily implied in every invocation of the plea of the statute, and both titles can not be paramount. Each is title against the government, and valid as between the parties to it, but, relatively, they are only ranked by age. The government, by its general policy, in the enactment of the statute of limitations, has only made their relative validity dependent upon the conduct of the grantees themselves in taking and holding possession. If the junior grantee gets possession, and holds adversely for the time prescribed for limitation, it becomes secure against the invasion or claim of the elder grantee. It is true, as a matter of abstract justice, when the State has once granted a part of her public domain to one of her citizens, she has no right to grant it to another. But such double grants are frequently made by the State, not in disregard of the obligations of public faith, but for want of correct and accurate information of the locality of the land sought to be appropriated by each grentee; and, in such cases, the statutes of limitations, as statutes of repose, must regulate the relative rights of the parties.

The town council of Goliad being the patentees of the government, and the original vendors of the land in dispute, in whom the legal title still remained, it was right and proper that they should be allowed to enter themselves defendants to resist the claim set up, in conjunction with their vendee, Pryor Lea, who was made the sole defendant by the petition. They were parties directly interested in the controversy to make good the title to their vendee. The court did not err in suffering them to be made parties.

The charge of the court being in consonance with the law of

the case, and the facts having been passed upon by the jury in a manner which they seem fully to warrant, this court will not disturb the verdict.

The judgment is affirmed.

Affirmed.