CAMPBELL et al. v. GIBBS et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 4, 1913. On Motion for Rehearing, Jan. 27, 1914.)

1. APPEAL AND ERROR (§ 989*)—QUESTIONS REVIEWABLE—FINDINGS—EVIDENCE.

The court, in passing on an assignment that the finding was contrary to the evidence, will only determine whether there was sufficient evidence to authorize the finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3897; Dec. Dig. § 989.*]

2. TRESPASS TO TRY TITLE (§ 41*)—GRANTS—LOCATION—EVIDENCE.

In trespass to try title to recover land under ancient grants, evidence *held* to sustain a finding that the land claimed had not been located and surveyed on the ground, so as to embrace the land claimed by plaintiff.

[Ed. Note.—For other cases, see Trespass, to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

3. TRESPASS TO TRY TITLE (§ 38*)—TITLE OF PLAINTIFF—BURDEN OF PROOF.

A plaintiff suing in trespass to try title to recover land under an ancient grant, has the burden of establishing the location of the grant, so as to include the land sued for.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

4. STIPULATIONS (§ 14*)—OPERATION AND EFFECT—EVIDENCE.

An agreement of the parties in trespass to try title, which stipulates that the defendants claiming under junior patents have such title,

if any, as was vested in the junior patentees, relieves defendants of the burden of establishing the consecutive links in their respective chains of title, and satisfies the requirement of the three-year statute of limitations as to title, or color of title, from the sovereignty.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

5. ADVERSE POSSESSION (§ 7*)—COLOR OF TITLE.

Where the state of Texas placed grants made by any former sovereign on the same footing as those made by the state, rights originating by treaty or under the Constitution or laws of the state were not violated, and such grants were not protected from the operation of the statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 12–16; Dec. Dig. § 7.*]

6. PUBLIC LANDS (§ 176*)—CONFLICTING GRANTS.

Where the state of Texas placed grants made by a former sovereign on the same footing as those made by the state, any grant by the state of a part of lands embraced in a grant of a former sovereign was void in the same sense that a grant by the state of land covered by a prior valid grant from the state is void.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 571–575; Dec. Dig. § 176.*]

7. ADVERSE POSSESSION (§ 73*)—COLOR OF TITLE—"SOVEREIGNTY OF THE SOIL."

Junior patentees of the state, or persons holding under the patentees, hold under the sovereignty of the soil within the three-year statute of limitations; the term "sovereignty of the soil" meaning, when the statute was first adopted in 1841, the then existing sovereignty.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 435–442; Dec. Dig. § 73.*]

Error to District Court, Madison County; T. J. Ford, Special Judge.

Trespass to try title by Charlotte Campbell and others against Mrs. S. Gibbs and others. There was a judgment for defendants for the respective tracks claimed by them, which covered substantially all of the land sued for, and plaintiffs bring error. Affirmed.

Alex C. Bullitt, of San Antonio, for plaintiffs in error. Dean, Humphrey & Powell, of Huntsville, and E. A. Berry, of Madisonville, for defendants in error.

REESE, J. This is a suit in trespass to try title, by Charlotte Campbell and others against Mrs. Sallie Gibbs and others, to recover four leagues of land lying in Madison and Walker counties. The land sued for is in two tracts, one being all of a certain grant of four leagues in the name of Gordiano Badilla, lying west of the Trinity river, and the other two-league grant in the name of Badilla. Some of the defendants disclaimed as to all of the land except certain described tracts, as to which they pleaded not guilty and the statute of limitation of three, five, and ten years. Others pleaded not guilty and the statutes of limitation. Some of them specially denied the validity of the so-called Badilla grants, and alleged that if there had ever been such valid grants the same did not cover or include any land in Madison or Walker counties. Plaintiffs dismissed as to some of the defendants. The case was tried by the court, without a jury. The plaintiffs had judgment on the disclaimers and partial disclaimers of certain of the defendants, and against W. L. Dean, who appeared to have claimed an undivided interest in the Gordiano Badilla grants. Substantially the judgment was in favor of the defendants for the respective tracts to which they asserted title, which covered substantially all of the land sued for. The plaintiffs prosecute error. The trial court filed conclusions of fact and law. The parties will be designated as appellants and appellees.

The appellants claim title under Andrew Dexter, as the owner of the two Gordiano Badilla concessions or grants, which were made by the government of Coahuila and Texas in 1832. The land claimed by appellants to be covered by these grants, in Walker and Madison counties, was afterwards covered by patented locations by the republic and state of Texas, and defendants claim title under these patents. The concession was for 11 leagues, under which was surveyed the following two tracts of land of 4 and 2 leagues, respectively: "Commencing the first corner on the black oak, eighteen inches in diameter, from there south 450 west, 1971 vrs. to the corner of the tract of Valentin Elquezaval; from there continuing the same course with his line, 14,140 vrs. to the River Trinity; passing the same and continuing with the line of the Citizen Jose Maria Musquiz 14,140 vrs. to the second corner; from there south 45 east, 3535 vrs. third corner; from there north 450 east 13,765 vrs. to the Trinity river, passing this and continuing the same course 14,915 vrs. to the fourth corner; from there north 450 east 3535 vrs. to where the survey commenced, containing four leagues. Beginning the first corner up the west margin of the Trinity river where the lower line crosses of a tract survey to the Citizen Jose Maria Musquiz; from there southwest with his line, 15,420 vrs. second corner; from there south 450 east, 3,252 vrs. to the third corner; from there north 450 east 15,329 vrs. to the fourth corner; on the west of the Trinity river; from there up the river to the corner where it was commenced, containing two leagues."

All of the land west of the Trinity river in Madison and Walker counties in the four-league tract is embraced in this suit, and all of the two-league tract, which also lies in Madison and Walker counties. The following agreement as to the facts was entered into by the parties and introduced in evidence:

"(1) That where heirship is a necessary link in the chain of title of any of the par-

ties, such heirship will stand admitted, and proof thereof is hereby expressly waived.

"(2) That subject to rights, if any they have, of the defendants under the statutes of limitation, the plaintiffs and defendant W. L. Dean are the owners of the Gordiano Badilla grant of land, and have such title, if any, to the land in controversy as was granted to Gordiano Badilla or Andrew Dexter, or any one holding title under either of them, and as the same relates to the Gordiano Badilla two-league survey of land referred to in plaintiffs' petition, the defendant W. L. Dean has an undivided one-half interest, and as to that part of the four-league survey referred to in plaintiffs' petition, said defendant W. L. Dean has an undivided $5806/17712$, and the plaintiffs have the remainder of such title, if any, as was vested in the said Gordiano Badilla or the said Andrew Dexter, or any one holding under them, to said tracts of land.

"(3) It is agreed that the plaintiffs may offer in evidence certified copies of the testimonio relating to said Badilla title now on file in the office of the commissioners of the general land office of the state of Texas, subject to the same objections only as might be made to said testimonio itself were it offered in evidence.

"(4) It is agreed that the several defendants claiming under so-called junior patents have such title, if any, as was vested in the junior grantees or patentees of the several tracts of land claimed by the said defendants, respectively, by their answers in this cause."

"(7) It is not intended hereby to agree that the said Badilla grant of land was located so as to cover or include the land in controversy, as claimed by plaintiffs, but the question of the original location of said land, and whether it includes the lands claimed by defendants, is a question to be determined by evidence introduced upon the hearing of this cause, and this agreement is without prejudice, either to the contention of plaintiffs that said Badilla grant of land was originally located as claimed by the defendants (plaintiffs), and is also without prejudice to the contention of the defendants that said Badilla grant of land was not located so as to cover and include the lands claimed by the defendants, respectively.

"(8) It is also expressly provided that this agreement is without prejudice to any of the pleas of limitation set up by the defendants herein, and without prejudice to the rights of the defendants, or any of them, under their respective pleas of limitations and the proof that may be offered in support thereof."

The case turned very largely upon the true location of the two Badilla grants, the appellants claiming that they were located, that part of the four-league grant west of the Trinity river in Madison and Walker counties, and the two leagues almost entirely in Walker county, with a small portion thereof in Madison county, as shown by the delineation thereof on the present maps of said counties, covering the land in controversy, and the appellees denying that any portion of either grant was located in either of said counties, or covered any part of the surveys of land claimed by them or either of them. Beginning in 1838, by patents issued by the republic of Texas, and continuing until substantially all of the lands covered by the Badilla grants in Madison and Walker counties, as claimed by appellants, were taken up, all of said land has been covered by locations and patents from the republic and state, under which appellees hold title.

The following findings of fact of the trial court are substantially supported by the evidence, and are adopted by us as our conclusions of fact:

"Third. I find that the evidence fails to show that the lands and premises described in plaintiffs' petition were ever in fact located and surveyed on the ground as the place where plaintiffs claim said lands to be located. The evidence wholly fails to show any original marked lines or corners called for in the original field notes contained in the testimonios of title offered in evidence by the plaintiffs; and there was no evidence whatever tending to show that the Valentin Elquezaval grant was located adjacent to the line of the upper Gordiano Badilla grant, as called for in the original field notes of said upper Badilla grant, nor was there any evidence offered tending to show that the Jose Maria Musquiz survey was ever located adjacent to either of the Badilla grants, as called for in the field notes covering said Badilla grants, but there was evidence tending to show that the Valentin Elquezaval and Jose Musquiz surveys were located in different parts of the state of Texas, to wit, on Red river.

"Fourth. I further find that the lands claimed in plaintiffs' petition were never platted in the General Land Office and shown on the official map in use in the General Land Office, covering what is now Walker and Madison counties, until the year 1858, and the evidence fails to show by what authority said lands were then platted on the maps in the General Land Office as being originally located and surveyed where said grants are shown on the maps of Walker and Madison counties in use in the General Land Office from and after the year 1858, and where said lands are claimed to be located by the plaintiffs.

"Fifth. I further find that prior to the year 1858 other locations were made upon valid certificates issued by proper authority, and surveyed upon the very lands claimed by the plaintiffs to be covered by the Badilla grants, and that said locations and surveys were prior to the platting of said grants upon the land office maps of what is now

Madison and Walker counties, and that valid patents were issued by the republic and the state of Texas upon practically all of said locations and surveys.

"Sixth. I find that there has been continuous assertion of title by those holding under said locations and patents emanating from the republic and state of Texas, and including the lands claimed by the defendants in their several answers filed herein, and, on the contrary, the evidence fails to show a continuous and connected assertion of title under the original grants to Gordiano Badilla, or his agent Andrew Dexter, of the lands claimed by the plaintiffs.

"Seventh. I further find from the evidence that the following surveys of land patented by the republic and state of Texas, and which appear to be in conflict with the lands claimed in plaintiffs' petition, were settled on by the original grantees and patentees, and those claiming under the original grantees, more than 50 years ago, to wit: James J. Holcomb survey of 6,636,540 square varas; the B. F. Dyer 640-acre survey; the Wm. Garrett survey of 2,952 acres; the M. G. Clements 160 acres; the Jno. D. Murphy survey of 320 acres; the Christopher Edinburgh survey of 640 acres; the David Davis survey of 640 acres; the S. P. Reeves survey of 320 acres; the Henry L. White survey of 320 acres—and that the following surveys were settled on by the original grantees, or those holding under them, more than 30 years ago, to wit: The Chas. Hill 320-acre survey and the J. D. Baker survey of 160 acres; the John Henry Pierson survey; the John Montgomery survey; the Elizabeth Jones survey; the George Young survey; and the Antonio Herrera one-half league survey.

"Eighth. I further find that the following defendants have shown sufficient actual and adverse possession of the lands claimed by them and described in their respective answers to entitle them to recover under the statutes of limitation as follows: The defendants W. L. Hill, J. A. Elkins, W. A. Sims, B. F. Gibson, under the statutes of limitation of three, five, and ten years; the defendant C. M. Ford under the statutes of limitation of three, five, and ten years; the defendants A. Roundtree, Phil Terrell, Henry Barrett, Alonzo Young, Henry Tucker, and William Tucker under the statutes of limitation of ten years; the defendant M. D. Seay is entitled to recover the first tract of land described in his answer under the statutes of limitation of three, five and ten years, and the tract in his answer described which is neither a part of the J. S. Hunter nor John Spiller survey, under the statutes of limitation of ten years; the defendant R. E. L. Upchurch is entitled to recover the first tract of land described in his answer (being all the land claimed by said defendant in conflict with the lands described in plaintiffs' petition) under the statutes of

limitation of three, five, and ten years; the defendant Dan Manning is entitled to recover the lands described in his answer under the statutes of limitation of five and ten years; the defendant W. L. Dean is entitled to recover the 160 acres described in his answer under the statutes of limitation of five and ten years; the defendant J. A. Herring is entitled to recover under the statutes of limitation of three, five, and ten years; the defendant Mrs. Sallie E. Gibbs is entitled to recover the third, fourth, eighth, and ninth tracts described in her answer under the statutes of limitation of three, five, and ten years, and tract No. 6 in her said answer described, under the statutes of limitation of three and five years, and tracts Nos. 7 and 12 in her answer described, under the statutes of limitation of three and five years.

"I further find that all the defendants hold regular claims of title from and under the republic and state of Texas to the several tracts of land as claimed by them, respectively, and in their said answers described."

[1, 2] The first assignment of error goes to the heart of the case by attacking the conclusion of fact embraced in the third finding, as above set out, as to the location of the two Gordiano Badilla surveys, west of the Trinity river. Under this assignment appellants present the proposition that the evidence conclusively shows that the said grants were located upon the lands claimed by them, and embrace and include the lands claimed by appellees. In passing upon this assignment it will only be necessary to determine whether there is sufficient evidence in the record to authorize the finding complained of. After a careful examination of the evidence we have concluded, as shown by our conclusions of fact, that this conclusion of the trial court is sufficiently supported by the evidence, and have adopted the same.

There was evidence sufficient to show that these two surveys, although made in 1832, were never delineated on any map of Madison or Walker county until 1858. A. H. Wooters, who seems to have been interested in them, had a survey made in 1858, locating the surveys where appellants claim them to be, and it is fairly to be inferred from all the evidence that it was not until after this that they were so marked or delineated on the maps of these counties. Witnesses testified that no trace could be found on the ground of any line older than the one made by these surveys of 1858. Persons living on, or in the neighborhood of, the land testified that they had never heard of a Badilla grant, as covering the lands sued for, until about 10 or 12 years before this suit was filed (in 1911). The field notes of the four-league grant call to begin at the first or northeast corner, east of the Trinity river, and in Houston county, at a black oak 18 inches in diameter. It is not surprising that no trace

could be found, after this length of time, of this witness tree. From this point the field notes call to run 1,971 varas to the corner of the tract of Valentin Elquezaval. This was on the east side of the river in Houston county. Continuing, the line runs 14,140 varas to the Trinity river, crosses the same and continuing with the line of the citizen Jose Maria Musquez 14,140 varas to corner. This makes two calls on the north line of the four leagues for older surveys. The field notes of the two leagues, lower down on the Trinity, and all except a small portion on the north side, which is in Madison county, lying in Walker county, call to begin "on the west margin of the Trinity river where the lower line of a tract surveyed to citizen Jose Maria Musquiz crosses the river." The call for this tract and the Trinity river as the eastern boundary are the only calls except those for course and distance. The testimony showed that there were no such surveys as the Elquezaval or the Musquiz anywhere in the neighborhood of either of the Badilla surveys, either in Walker, Madison, or Houston counties. There was nothing to indicate where either of these surveys was, or ever had been, located. On the contrary, the evidence tended to show that no such surveys had ever been shown by the records of the General Land Office, in either of these counties. These records showed or tended to show that the only survey in the name of Valentin Elquezaval was in Red River county, and the only reference to a Jose Maria Musquiz survey locates it on the Trinity river, above the old San Antonio road, and 10 or 15 miles above the Badilla four leagues as located by appellants. The evidence with regard to these Musquiz and Elquezaval grants is very vague and indefinite, but it is sufficiently clear that, so far as the location of these grants is connected with either of the Badilla grants, they rebut the inference that the last two grants were located as claimed by appellants, or touched or included any of the lands in controversy. Referring to what was shown about the Musquiz grant, M. M. Kenney, Spanish translator in the General Land Office and custodian of old Spanish records, testified that there was among these records a title in the name of Jose Maria Musquiz, and there was a pencil memorandum on the title papers as follows: "Five leagues on both sides of the Angelina above the San Antonio road, adjoining above the Gordiano Badilla." It is quite likely that the reference to the Angelina river was a mistake, and intended for the Trinity. It does appear that the Musquiz survey, called for in the field notes of both the Badilla grants, lay on both sides of the Trinity river. This memorandum on the title of the Musquiz above referred to is, we think, of much significance; when we consider the hazy condition of the evidence, as to the location on the ground of the Badilla surveys, when considered in connection with parts of the title

of the Badilla grant, introduced in evidence by appellants, as the foundation of their title. The application for the concession by Dexter designates the lands desired as a part of the vacant lands which front on the Trinity river, above the road that goes from this town (Nacogdoches) to San Antonio, and part in the neighborhood of the Neches river. The acting alcalde, who received the petition, in making his order thereon states: "I, the alcalde commissioned, having gone with the interested parties, with the surveyor appointed and witnesses of assistance, to the Trinity river, on the road which goes from this town to San Antonio de Bexar, and having made upon the left margin of said river measurements," etc. These statements are with reference to the four leagues, and would tend to corroborate the other evidence to show that this grant was located above the San Antonio road. The field notes of the two-league grant also call for a Musquiz grant, whose lower line was the upper line of this survey, while the lower line of the Musquiz grant called for in the four league was also upper line of the four leagues, from which it would appear that there were two Musquiz surveys. It is further to be noted that the two leagues follow in the title the four leagues, and that the field notes of the two league call, "Beginning the first corner up the west margin of the Trinity river," which would indicate that the two leagues were located above the four leagues on the Trinity, while of the two surveys, as claimed by appellants, the two leagues lie below the four leagues on the Trinity. It was shown that the old road from Nacogdoches to San Antonio de Bexar crossed the Trinity river more than ten miles above the upper of these two surveys, if located as claimed by appellants.

Now while this evidence does not show with any definiteness and certainty where, in fact, the two Gordiano Badilla surveys were located, it certainly cannot be said that it even tends in any degree to indicate that they were located where appellants claim, or so as to include any of the lands claimed by appellants.

But it was further shown that these surveys were never delineated on any map of Madison or Walker counties in use in the General Land Office until 1858, and to show that they were not recognized in the General Land Office as located where appellants claim, the entire body of lands covered by both of them has been taken up by patented locations, recognized as valid by the state. The patents issued for various tracts and at different dates extending from 1838 to 1858, and one tract in 1894, about 30 surveys in all. This shows that during all of these years this body of land was treated as vacant land. The grantees and those holding under them have, some of them, been living upon the land for 50 years with no knowledge or information on the part of the owners, until the be—

ginning of this litigation, that the land, or any part of it, was covered by the Badilla grants. It is a further circumstance, slight, it is true, that as claimed by appellants the upper line of the two leagues crosses the Bedias creek twice, and the lower line of the four-league survey crosses it once after crossing the Trinity river. It was shown that this was a well-known stream of considerable size, and it was in testimony that it was almost the universal custom, in making surveys, to call in the field notes for the crossing of streams of this size. This creek was not called for in the field notes of either survey. Taking this circumstance for what it is worth, it corroborates the theory that these surveys were originally located several miles above where appellants claim them to be.

[3] The only evidence of any importance in the record which sustains appellants' contention is the following: "It was shown that the field notes of several patented surveys, in both Madison and Walker counties, call for some of the lines of these Gordiano Badilla surveys, and these surveys are so located on the map as to show that the lines called for are the same as claimed by appellants. It was shown that prior to 1858, when the Badilla surveys were first delineated on the maps of Walker and Madison counties, a few surveys were made in those counties, and the field notes returned to the General Land Office in which the lines of the Badilla surveys, one or the other of them, were called for, and that, according to these calls, the lines of the Badilla grants can be located as claimed by appellants. There were several of such surveys in Houston county, in which about one-half of the four-league grant, according to the field notes introduced by appellants, lay, some before and some since 1858, and several made in Madison and Walker counties calling for the Badilla surveys made since 1858." We are not disposed to minimize the strength of this testimony as tending to show a location of the Badilla grants in Madison and Walker counties, corresponding to the location claimed by appellants. We do not think, however, that it is sufficient, when the evidence hereinbefore referred to is considered, to compel the conclusion on the part of the trial court that the grants were so located and were valid. In so far as these calls show or tend to show a recognition by surveyors of the location of the lines called for, it must not be lost sight of that the state and the republic through the General Land Office was all of the time recognizing locations made on this land, and issuing patents therefor. This can only be accounted for upon another theory which finds support in the evidence. It was shown that the Badilla grant of 11 leagues was located twice; once in 1832, by Andrew Dexter, attorney in fact for Badilla, and again in 1833 by Adolphus Sterne and Roberts in Red River county. This last location seems to be recognized as valid in the General Land Office. The original of the grant or concession is attached to the papers of the Red River or Sterne title, while only a copy is so attached to the Dexter title. For some unexplained reason, it may be that with the consent of all parties interested, the locations on the Trinity were abandoned and the grants located in Red River county. Whether this be true or not does not affect the question presented by the assignment of error under consideration. Taking all of the evidence on this point in the entire record, we are unable to say that the trial court erred in the finding of fact, set out in the third paragraph thereof, that the evidence fails to show such location of the Badilla grants as would include any of the lands sued for. If this is true, appellants' case fails. The burden was upon them to establish this fact. This disposes of the first assignment of error, which is overruled. The second proposition under the assignment is not germane to the assignment. The court's finding of which complaint is made does not involve the question presented by the proposition.

If appellants failed to establish their right to recover any of the land sued for, the other assignments of error become immaterial. They can be disposed of without much discussion.

The second, third and fourth assignments of error complain of certain findings of fact on the ground that they are not supported by the evidence. We cannot undertake, in this opinion, to set out the evidence which supports and justifies these findings. We have examined all of the evidence with care before making our own conclusions, as stated. In adopting the trial court's findings of fact we disposed of these assignments, which are overruled.

[4] The other assignments of error relate to the trial court's conclusions as to the title of appellees under the statutes of limitation of three, five, and ten years. The court found that some of appellees had established their title under the three-year statute of limitation—that is, that they had been in possession of the tracts claimed by them for three consecutive years—and that they had title or color of title from the sovereignty. To establish their title from the sovereignty, appellees relied upon that part of the agreement hereinbefore set out wherein it was agreed that the several defendants claiming under so-called junior patents have such title, if any, as was vested in the junior grantees or patentees of the several tracts of land claimed by the said defendants, respectively, by their answers in this case. The appellees set up title under the several original grantees or patentees to whom the several tracts had been patented by the republic and state of Texas. The purpose of the agreement was to relieve appellees of the burden of establishing the consecutive links

in their respective chains of title, by an admission that they had such title. The case under the admission stands as though each of the appellees had established, by a regular unbroken chain, his title from the original grantee under whom he claimed. This satisfied the requirements of the three-year statute as to title or color of title from the sovereignty.

[5, 6] But it is contended by appellants that the land had been granted to Gordiano Badilla by a former sovereignty, and had never been subject to the sovereignty of the republic or state of Texas, and that therefore (1) the provisions of the three-year statute of limitation as to title or color of title from the sovereignty is not met by showing such title under the republic or state of Texas, and (2) that, if the provision of the statute were so construed as to meet this case, it was beyond the power of the Legislature thus to divest the title under the former sovereignty. Neither of these contentions is sound. The state has always shown a religious regard for valid titles emanating from any former sovereign. When such grants are placed upon the same footing as those made by the state herself, it certainly cannot be said that any rights, whether originating by treaty or under the Constitution or laws of this state, have been violated. There is nothing in the nature of those rights to protect them from the operation of the statutes of limitation adopted for the settlement of land titles. The "sovereignty of the soil" in the three-year statute meant, when the statute was first adopted in 1841, the then existing sovereignty. The change from the republic to the state wrought no change in this sovereignty except to transfer it to the state, the present sovereign. Any grant or patent by the state of any part of the lands embraced in the Badilla grants, if these grants had been valid grants of these lands, would have been void in no other sense, and certainly no further than would have been void patents by the state of lands covered by prior valid patents from the state. In either case the state would be without power to convey title to lands which had previously been disposed of by valid grants of a previous sovereign or patents emanating from itself.

[7] But in the case of junior patents, upon lands previously titled by the state, it seems to be well settled that such junior patentees or persons holding title under them hold under the sovereignty of the soil, and may prescribe under the statute of limitation of three years as against the holder under the senior patent. Whitehead v. Foley, 28 Tex. 14; Smith v. Power, 23 Tex. 29; League v. Rogan, 59 Tex. 431; Galan v. Town of Goliad, 32 Tex. 776; Land Mortgage Co. v. State, 1 Tex. Civ. App. 616, 23 S. W. 259. .

We have concluded that the court's conclusions of fact with regard to the claim of

title by appellees under the statutes of limitation were supported by the evidence, and will not be disturbed. The remaining assignments of error have been examined and our conclusion is that none of them presents any ground for reversal of the judgment, even if material. None of them is, in fact, material in view of the court's findings, approved by us, that appellants failed to establish the one fact absolutely essential to their right to recover; that is that, assuming the validity of the Badilla grants, they are not shown to cover any part of the lands sued for. Finding no grounds for reversal, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

In plaintiffs in error's motion for rehearing attention is called to what is shown to be an erroneous statement as to the facts. It does not appear who made the survey of 1858 of this grant. The survey which was afterwards made by A. H. Wootters, or in which he assisted, was made in 1888 or 1889. Plaintiffs in error are in error in saying that it is stated we found as a fact that A. H. Wootters testified that no trace could be found on the ground of any older survey than the one of 1858. The opinion does not so state. The errors corrected are immaterial.